**ITT WORLD COMMUNICATIONS,
INC., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.**

Dockets 79–4220, 80–4003, 80–4016.

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1980.

Decided May 7, 1980.

Grant S. Lewis, New York City (John S. Kinzey, Karen Hutson, Leboef, Lamb, Leiby & MacRae, New York City, Joseph J. Jacobs, Theodore J. Fischkin, Susan I. Littman, ITT World Communications, Inc., New York City, on brief), for petitioner ITT World Communications, Inc.

John E. Ingle, Asst. Gen. Counsel, F. C. C., Washington, D. C. (David J. Saylor, Deputy Gen. Counsel, Daniel M. Armstrong, Assoc. Gen. Counsel, F. C. C., Washington, D. C., on brief), for respondent Federal Communications Commission.

H. Richard Schumacher, New York City (P. Kevin Castel, Daniel A. Fried, Cahill, Gordon & Reindel, New York City, on brief), for intervenor RCA Global Communications, Inc.

H. Richard Juhnke, Washington, D. C. (Joel Yohalem, Washington, D. C., on brief), for intervenor Western Union Telegraph Co.

Robert E. Conn, New York City, on brief, for intervenor Western Union International, Inc.

Before LUMBARD, MANSFIELD and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This motion to dismiss or transfer a petition for review of a decision of the Federal Communications Commission involves determination of when and where such decisions are reviewable. The Commission moves to dismiss the petition, filed by ITT World Communications, Inc., for lack of jurisdiction, alleging that it was filed prematurely, and that the first timely petition for review was filed in the Court of Appeals for the District of Columbia Circuit.[1] See 28 U.S.C. § 2112. This motion essentially requires determination of which of the circuits should consider a petition for review

of the same agency order—in other words, who has won the all too familiar "race to the courthouse." However, unlike many cases where the issue is who won the race, the question here is when did the race begin.

## I. Facts

The subject matter of the FCC decision concerns international record, or non-voice, communications services, most notably "telex." When the Western Union Telegraph Company (Western Union) acquired its virtual monopoly of the domestic telegraphy market, it was required to divest itself of its existing facilities for overseas services, 47 U.S.C. § 222.[2] The divested facilities were acquired by Western Union International, Inc. (WUI), an unrelated company. At present, overseas record service is provided by a group of common carriers, the largest of which are ITT, the petitioner, and WUI, RCA Global Communications, Inc. (RCA), and TRT Telecommunications Corp. These carriers are restricted in their United States operations to a small number of "gateway" cities; they communicate with United States customers outside these cities by means of telegraphic connections with domestic carriers, primarily Western Union.

In September, 1979, Western Union began offering direct overseas services to its customers, not through the gateway cities, but through overland connections to Canada and Mexico.[3] After protesting this action to the Federal Communications Commission, ITT brought suit against Western Union in the United States District Court for the Southern District of New York. The Court (Charles L. Brieant, Jr., Judge) invited the Commission to participate in the proceedings. The Commission responded

---

1. l. The Commission's motion to transfer the action to the District of Columbia Court of Appeals is based on the criteria established by 28 U.S.C. § 2112. This motion is discussed in Part III of this opinion.

2. This statute has recently been interpreted to prohibit a carrier that merges with another under § 222 from providing any overseas services. *Western Union International, Inc. v. FCC*, 544 F.2d 87 (2d Cir. 1976), cert. denied, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977).

3. Subsections 222(a)(5), (6) define services between the United States and Canada or Mexico to be "domestic" rather than "international."

that it would deal with the substance of the matter raised by the ITT petition in a proceeding of its own, consisting of a public meeting to be held on December 12, 1979.

At the December 12 meeting, the Commission by formal vote adopted F.C.C. Order 79–845, which decided that Western Union's overseas service did not violate 47 U.S.C. § 222. The Commission did not at that time release a written opinion stating its findings and conclusions; however, on that day it distributed the summary minutes of the meeting, listing adoption of the order, and also issued a news release announcing and describing the decision. The Commission's general counsel then wrote to Judge Brieant that same day, informing him that the Commission had acted on ITT's complaint. This subsequently led Judge Brieant to dismiss ITT's action against Western Union as moot. Also on December 12, 1979, ITT filed in this Court its petition for review of the Commission's December 12 decision naming the Commission as the respondent.[4] This was the first petition filed after the December 12 meeting.

Some three weeks later, on January 3, 1980, a representative of RCA Global Communications was informed by the Commission staff that the full text of the FCC's opinion in the ITT matter would be released that day, at 11:00 a. m. This time was consistent with announced Commission policy of releasing public documents at 11:00 a. m. and 3:00 p. m. each day. On the basis of this information, a representative of RCA proceeded to the Commission's Washington headquarters that very morning. According to the uncontradicted affidavit of the RCA representative, she arrived at about 10:20 a. m. to find the Commission's final opinion set out on a counter with a written note beside it stating that it had been released at 9:30 a. m. She immediately telephoned New York to arrange for the filing of a petition for review in the Second Circuit, which was RCA's, as well as ITT's

circuit of choice. Apparently, however, a Western Union representative had arrived earlier at the FCC office, for Western Union's petition was filed in the District of Columbia Circuit, some thirteen minutes before RCA's petition was filed here. As a result, the Western Union petition was the first to be filed after release of the Commission's full opinion.

Both Western Union and the Commission contend that ITT's petition is premature and that Western Union's petition, filed in the D.C. Circuit after the January 3 opinion, is the first one validly invoking appellate jurisdiction. On this basis, the Commission moves to dismiss ITT's present suit before this Court, and leave the matter pending in the D.C. Circuit. ITT responds that its petition, filed after the December 12 meeting, gives this Court jurisdiction because it has temporal priority over the D.C. Circuit petition. Alternatively, the Commission moves to transfer ITT's petition to the District of Columbia Circuit. We deny the motion to dismiss for lack of jurisdiction, though, as will appear in Part II, the members of the panel reach this conclusion by different routes. We also deny the motion to transfer, and on this issue we share the same reasons, see Part III, *infra*.

## II. Jurisdiction

■ The rules determining the proper court for appellate review of administrative decisions are found in 28 U.S.C. §§ 2112, 2344. Section 2344 provides, in part:

> On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.

Section 2112(a) provides, in part:

> If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency,

4. RCA, WUI, and TRT have intervened in support of ITT's petition, and Western Union has intervened in opposition to it.

board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.

These two statutory provisions establish two criteria for determining whether an appellate court has jurisdiction over a particular petition. Section 2344 requires that the petition must be an appeal from a "final order"; § 2112 requires that the petition must have temporal priority over any other petition filed with respect to that order. There are thus two ways in which the concept of finality enters into the jurisdictional determination. The order appealed from must be sufficiently "final" to be reviewable under § 2344 and it must be sufficiently "final" to serve as the starting bell for the priority race under § 2112. When a court is required to choose between two petitions seeking review of the same order, these two aspects of finality will correspond; if the order is sufficiently final to be reviewable, it is sufficiently final to serve as the starting bell. In the present case, the Court must choose between two petitions based on two different agency actions. If the decision announced at the December 12 meeting constitutes a final order, then ITT's petition has priority; if the decision was not final until the full opinion was released on January 3, then priority belongs to Western Union. In order to make this determination, both aspects of finality must be considered: whether each event was sufficiently final to be reviewable, and, if so, which one is more appropriately regarded as the final order for the purpose of starting the priority race.

All members of the panel agree that the petition filed by ITT is entitled to priority.

For reasons stated in Judge Mansfield's opinion, concurred in by Judge Lumbard, the Court holds that the action taken by the Commission at its December 12, 1979, public meeting was sufficiently final to provide a basis for judicial review under 28 U.S.C. § 2344 and for that reason was sufficiently final to start the race to the courthouse authorized by 28 U.S.C. § 2112. For reasons hereinafter stated in the remainder of Part II, which represent my views as distinguished from those of the Court, I would resolve the priority issue on other grounds.

There is considerable force to ITT's argument for treating the decision reached at the December 12 meeting as the official starting bell. The action taken at this meeting was regarded by all the participants as final. It was described as such to Judge Brieant by the Commission's general counsel, and was sufficient for Judge Brieant to dismiss a private suit by ITT on grounds of mootness. Clearly, ITT and the other international carriers that have intervened in support of its position were bound by the Commission's decision. See *Industrial Union Department, AFL–CIO v. Bingham*, 570 F.2d 965, 971 (D.C.Cir. 1977). Requiring them to await publication of a written opinion, while thus bound by action already taken, could impose a potentially substantial burden.

The two cases that have considered this issue support ITT's position. In *Saturn Airways, Inc. v. CAB*, 476 F.2d 907 (D.C.Cir. 1973), the D.C. Circuit took jurisdiction of a petition filed after adoption of new regulations and issuance of a press release, but before publication of the text of the regulations.[5] In *Industrial Union Department, supra*, 570 F.2d at 968–71, that Court took jurisdiction of a petition filed after a meeting at which an emergency temporary standard had been signed, but before a press release had been issued. Judge Wilkey dissented on the ground that the petition was premature, having been filed before the press release was issued, but he was in

---

**5.** Review of CAB orders is governed by the Aviation Act, 49 U.S.C. § 1486, rather than 28 U.S.C. § 2344. However, the provisions of the two statutes are analogous in their relevant aspects.

agreement with the majority that formal publication of the agency's decision was not required. See *id.* at 973.

The Commission's arguments for regarding the publication of its findings and conclusions as the proper starting bell are less persuasive. The first argument rests on the fact that the time for filing a petition for review is limited by statute to 60 days. *Microwave Communications, Inc. v. FCC,* 515 F.2d 385 (D.C.Cir. 1974), held that a petition for review filed more than 60 days after a summary report of the Commission's action, but less than 60 days after release of the full text of the order, had been filed in a timely manner. Since the petition in the present case could have been timely filed as late as 60 days after the January 3 opinion, according to the *Microwave* ruling, the Commission argues that permitting the petition to be filed prior to that opinion impermissibly extends the statutory filing period beyond 60 days. The difficulty with this argument is that the 60-day limit is designed for the benefit of the agency, and it is the agency that has created the uncertainty as to the proper starting time. I agree with the result reached in *Microwave,* since in that case it would have been inequitable to deny a petitioner his right to review because he had guessed wrong about the starting time and filed too late. By the same reasoning, however, it is inequitable in some circumstances, albeit not as seriously so, to deny a petitioner his opportunity to choose his forum because he has guessed incorrectly and filed too early. While I would not give a petitioner more than 60 days to file, Fed.R.App.P. 26(b), I would not apply the same 60-day period to all petitioners, when the Commission itself has created the ambiguity as to when the 60-day period begins.

Secondly, the Commission argues that awaiting release of the full text of an agency's decision encourages the filing of thoughtful appeals, based on the reasoning of the agency, not merely on its result. That is certainly a desirable goal, and many of the cases that have discussed these filing procedures decry the precipitous manner in which petitions are filed. See *Industrial Union Department, supra,* 570 F.2d at 970; *Microwave Communications, supra,* 515 F.2d at 392; *Saturn Airways, supra,* 476 F.2d at 910. But the hastiness of the filings is inevitable whenever the selection among circuits depends upon a race, regardless of what event starts the race. Using the release of the agency's full opinion as the starting bell is hardly likely to encourage thoughtful appeals based on that opinion. In this case, Western's Union petition, which the Commission urges us to regard as the decisive one on the basis of its thoughtfulness, was filed less than fifty minutes after the full opinion was released. That petition was obviously prepared on the basis of the Commission's December 12 action. The full opinion was studied, if at all, on the way to the courthouse. Moreover any advantage based on the availability of the Commission's opinion is rendered minimal by the lenient federal rules for supplementing an appellate record. See Fed.R.App.P. 16(b).[6]

Moreover, in this particular case, there is an additional difficulty that would result from determining priority of filing on the basis of the January 3 release. The opinion was released by the Commission about one-and-a-half hours before its announced time for releasing public documents. Rather than being time-stamped, it was simply left on a counter, with a note beside it indicating the time of release. Casual practice such as this hardly seems an appropriate

---

6. Fed.R.App.P. 16(b) provides:

 If anything material to any party is omitted from the record or is misstated therein, the parties may at any time supply the omission or correct the misstatement by stipulation, or the court may at any time direct that the omission or misstatement be corrected and, if necessary, that a supplemental record be prepared and filed.

On the basis of this Rule, little weight should be attached to the Commission's subsidiary argument that filing must await the final opinion because 28 U.S.C. § 2344 requires that "copies of the order, report, or decision of the agency" be attached to the petition for review.

basis for determining the rights of competing litigants; it is far too conducive to uncertainty, confusion, and administrative irregularity.[7] The December 12 meeting was, at least, a public event, with the order in question adopted by the unambiguous action of a formal, recorded vote.

Thus, if I were compelled to decide this case solely on the basis of temporal priority, I would conclude that ITT's petition invoked our jurisdiction and obtained a priority that defeats the motion to dismiss. However, I do not regard temporal priority as an entirely satisfactory basis for answering the jurisdictional question. Both the December 12 meeting and the January 3 opinion are events that fulfill the first aspect of finality under § 2344; they are sufficiently dispositive to be reviewable. But neither adequately fulfills the second aspect of finality under § 2112; neither is appropriate to serve as the start of a priority race. In my view, an agency action cannot be sufficiently final to serve as the starting bell for the priority race under § 2112 unless it is unambiguous, that is, unless a reasonable person could be certain at the time the action took place that the action started the priority race.

The statutory rule of temporal priority for determining which court of appeals should rule on a petition rewards unseemly haste, but it at least purports to have the compensating virtue of certainty. That is the reason why this rule was adopted by the statute. In general, there are few decisions that are less subjective, and, barring dead heats, less ambiguous than those determining the winner of a race. This will be true, however, only when there is agreement about when the race begins. When, as here, the contestants have begun at different starting bells, both of which may be properly regarded as reviewable events, it is impossible to declare a winner without determining which event should start the race. The need to make such a determination, however, may well introduce all the uncertainties that the rule of temporal priority was designed to eliminate. In other words, when there is a genuine ambiguity about the starting point for the priority determination, the basic reason for using a rule of temporal priority—achieving certainty—no longer exists. It seems pointless to apply the statute in a manner that frustrates the purpose for which the statute was enacted. That only serves to sacrifice the spirit that informs the statute to the language that was used to express it.

There are also persuasive policy reasons for not relying on temporal priority when the starting point must be chosen from two reviewable events, neither of which has been unambiguously designated to serve this purpose by the agency. It is not entirely fair to the private parties involved for a court to make such a choice; while parties generally take the risk that their own view of the law will differ from a court's ultimate decision, it is also true that courts attempt, when framing legal rules, to use the reasonable expectations of the parties as a guide. More importantly, if the parties are required to guess which agency action will ultimately be deemed to constitute the starting bell, they will respond defensively, filing successive petitions after every agency action that can possibly be regarded as a final order. Not only is this antithetical to notions of judicial economy and procedural regularity, but it is also likely to make agencies more hesitant to make public announcements, and thereby contravene the policy of the "Sunshine Act," 5 U.S.C. § 552b.

Rather than choosing between two possible starting times, therefore, I am persuaded that both the sense of the statute and considerations of policy point toward an alternative approach. The alternative is to be found in the statutory provisions governing transfer of a case to another circuit once jurisdiction has been taken. Section 2112 states that such transfers may be made "[f]or the convenience of the parties

7. These dangers are particularly significant in view of the fact that § 2112 was specifically designed to prevent federal agencies from determining the forum for review of their decisions. *Eastern Air Lines, Inc. v. CAB*, 354 F.2d 507, 511 (D.C.Cir. 1965).

in the interest of justice." To be sure, the statute contemplates that these criteria are to be applied only after priority has been determined on the basis of time. When temporal priority is ambiguous, however, it makes sense to read the transfer criteria back into the initial determination of priority. This interpretation is far more congruent with the purpose of the statute than any effort to choose between possible starting times.

Though the use of a rule based on convenience and justice does not restore the certainty that agency imprecision has removed, it is fair to the parties because it explicitly applies equitable considerations to the determination. In addition, this rule should lessen if not eliminate successive petitions, since each party need file only one. When the agency's adoption of its final order is an unambiguous event, the rule of temporal priority would apply as usual, and each party would file one petition in its effort to win the race.[8] When two agency events occur, both sufficiently final to warrant review but each arguably sufficient to start the time for review, each party need still file only once, since the choice between circuits would be made on the basis of factors other than the time of filing, and additional petitions would be pointless.[9]

While the case law has not explicitly recognized the transfer rules as a solution for ambiguity of starting times, such a conclusion is implicit in the recognition of these rules as a means of avoiding arbitrary choices between circuits. In *American Public Gas Association v. FPC*, 555 F.2d 852 (D.C.Cir. 1976), the Court applied the criteria of convenience and justice to determine which of two simultaneously filed petitions would control appellate jurisdiction. *Cf. International Union of Electrical, R. & M. Workers v. NLRB*, 343 F.2d 327 (D.C.Cir. 1965) (accepting determination of NLRB that petitions were filed simultaneously, and assigning jurisdiction on basis of NLRB's statutory power under NLRA § 10(e)). This was taken one step further in *Municipal Distributors Group v. FPC*, 459 F.2d 1367 (D.C.Cir. 1972), where a two-second difference in filing times was ignored, and the transfer rules applied without a conclusive determination of temporal priority. Ambiguity of starting times is as good a reason as actual or near coincidence of filing times to abandon the rule of temporal priority and resort to the transfer criteria; in all such situations the temporal priority standard cannot fulfill the purpose for which it was intended.

For these reasons I would decide whether we have jurisdiction over ITT's petition by applying the same criteria that must be applied to decide the Commission's alternative motion to transfer ITT's petition to the D.C. Circuit. Since, for reasons discussed in Part III, all members of the panel are in agreement that application of these criteria leads to denial of the transfer motion, I concur in the Court's holding that the Com-

---

**8.** To be sure, this is not the easiest goal for the Commission to achieve. The "Sunshine Act" requires that "every portion of every meeting of an agency shall be open to public observation," and defines a meeting as agency deliberations that "determine or result in the joint conduct or disposition of official agency business." 5 U.S.C. § 552b(a)(2), (b). Consequently, the Commission cannot eliminate the ambiguity in starting times by announcing its decision and releasing its opinion simultaneously; the decision must be reached at a public meeting, before the final opinion has been written. However, one way the agency could achieve certainty for purposes of appeal would be to adopt an order and postpone its effective date until the release of the full opinion, and clearly announce that it did not intend the order to be final until that date. Whether an agency could specify in advance that some other event would

constitute a final order, if the event did not correspond to that order's effective date, is a more difficult question, and one that I would not reach on the basis of the facts in this case.

**9.** The risk of successive petitions cannot always be totally eliminated. In some circumstances a party may file a petition after some agency action of doubtful finality, and then refile as soon as the agency takes action that is more clearly final. In the absence of an agency designation of when its decision-making process is final and reviewable, it would seem that any agency action evidencing disposition of a matter should be an acceptable basis for a petition, and there should be no need for protective petitions filed before such action has been taken.

mission's motion to dismiss for lack of jurisdiction should be denied.

### III. Transfer

The statutory criteria for determining a motion to transfer are the convenience of the parties and the interest of justice. Considerations of convenience center around the physical location of the parties. See *American Public Gas Association, supra,* 555 F.2d at 857; *Pan American World Airways, Inc. v. CAB,* 380 F.2d 770, 775 (2d Cir. 1967), *aff'd by an equally divided court sub nom. World Airways, Inc. v. Pan American World Airways, Inc.,* 391 U.S. 461, 88 S.Ct. 1715, 20 L.Ed.2d 748 (1968). These considerations suggest that the suit be heard in New York City, rather than in the District of Columbia. Of the five private parties involved in this litigation, three, including the petitioner, have their corporate headquarters in New York. Western Union is located in Upper Saddle River, New Jersey, a New York City suburb, and TRT is located in Fort Lauderdale, Florida.

As far as the general considerations of justice are concerned, two factors favor this Court's exercise of jurisdiction. First, the parties most clearly aggrieved by the Commission's decision are the existing international carriers. One of these, ITT, has filed the petition in this Court, and the others join in urging that this Court exercise jurisdiction. Western Union, on the other hand, which filed the petition in the D.C. Circuit, was primarily a beneficiary of the Commission's order; it objects only to the requirement that it file tariffs on its overseas service. It is a well recognized principle that the interests of justice favor placing the adjudication in the forum chosen by the party that is significantly aggrieved by the agency decision. See *J. L. Simmons Co. v. NLRB,* 425 F.2d 52 (7th Cir. 1970); *International Union, UAW v. NLRB,* 373 F.2d 671, 674 (D.C.Cir. 1967); *Ball v. NLRB,* 299 F.2d 683, 689 (4th Cir.), *cert. denied,* 369 U.S. 838, 82 S.Ct. 868, 7 L.Ed.2d 843 (1962).

A second factor favoring this Court's jurisdiction is its previous consideration of virtually the identical issue. *Western Union International, Inc. v. FCC,* 544 F.2d 87 (2d Cir. 1976), *cert. denied,* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977).[10] The D.C. Circuit has recognized that there is a significant interest in transferring a case to a court that has already ruled on an identical or related case, see *Municipal Distributors Group, supra,* 459 F.2d at 1368; *Eastern Air Lines, Inc. v. CAB,* 354 F.2d 507, 511 (D.C. Cir. 1965); *Public Service Commission v. FPC,* 472 F.2d 1270 (D.C.Cir. 1972), even though that same Circuit has rejected the notion that a case should be transferred to a circuit that has regularly considered cases involving the same industry, or the same type of legal questions, see *American Public Gas Association, supra,* 555 F.2d at 857–58, *Public Service Commission, supra.* The basis for this distinction is apparent: there is no general federal policy of developing specialized appellate tribunals, with established areas of expertise, but there is a policy of unifying related proceedings in a single court, and obtaining consistent results. See *American Public Gas Association, supra,* 555 F.2d at 857–58 & 857 n. 2; *Public Service Commission, supra,* 472 F.2d at 1272 & n. 4. The relationship between the present case and the previous case decided by this Court is sufficiently close for the interest in consistent results to come into play. While the two cases do not constitute the same proceeding, they do involve the same parties, the same statutory provision, and the same essential issue.

One countervailing factor, urged by the Commission, is that a series of somewhat similar cases is currently pending in that Circuit. The unification of similar pending cases in a single court is obviously an important concern, see *American Civil Liberties Union v. FCC,* 486 F.2d 411 (D.C.Cir.

---

10. In this case, the Court held that 47 U.S.C. § 222(c)(2) "was meant as a continuing bar to [Western Union's] involvement in international record communications." 544 F.2d at 93. It therefore concluded that a Commission deci-

sion permitting Western Union to apply for authority to provide mailgram service between the continental United States and Hawaii violated § 222.

1973); *Farah Manufacturing Co. v. NLRB,* 481 F.2d 1143 (8th Cir. 1973), but the relationship between ITT's petition and the pending cases in the D.C. Circuit does not appear sufficiently close to render this interest decisive. The pending cases to which the Commission refers involve the domestic telegraphy market, and are based on different subsections of 47 U.S.C. § 222. This situation is unlike either *American Civil Liberties Union, supra,* where the court found that the two cases involved the same record and challenged a single, multi-faceted agency undertaking, or *Farah Manufacturing, supra,* where the two cases were a petition for review and a cross-application for enforcement. Here, the relationship is far more remote, and it cannot counterbalance other considerations based on the convenience of the parties, the interest in favoring the forum choice of the genuinely aggrieved party, and the interest in consistency with prior decisions.

## IV. Conclusion

For reasons set forth in Judge Mansfield's opinion, we deny the Commission's motion to dismiss ITT's petition. For reasons set forth in Part III of this opinion, we deny the Commission's alternative motion to transfer the petition to the D.C. Circuit.

MANSFIELD, Circuit Judge, concurring, in which LUMBARD, Circuit Judge, joins:

I concur in part in Judge Newman's carefully-considered, thorough opinion and in the result he reaches. However, except as to the denial of the petition for transfer under 28 U.S.C. § 1404(a), I disagree with the resolution of this case on equitable principles.

In my view the action taken by the Federal Communications Commission at the public meeting of December 12, 1979, which bound the parties immediately, was sufficiently final not only to serve as the basis for judicial review under 28 U.S.C. § 2344 but also to serve as the starting bell for the race to the courthouse dictated by 28 U.S.C. § 2112. In short, the Commission's adoption of an immediately-effective order on December 12, 1979, accompanied by its release of minutes of the meeting and a description of its decision and order, was both final and unambiguous, rendering it unnecessary to resort to equitable considerations to determine when the Commission's action became final for purposes of these sections.

The action taken by the Commission at its December 12 meeting had all the basic elements of finality, which are

"whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action." *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970).

The decision and order, although described in the release as "unofficial," became effective on that date. ITT and the other international carriers were thereupon bound by it. Since the meeting was a public one all parties had an equal opportunity to learn fairly and simultaneously of the Commission's action and of the terms of its order and decision. See *International Union of Electrical, Radio and Machine Workers v. NLRB,* 610 F.2d 956, 963 (D.C.Cir. 1979).

Of course, the Commission has the power to specify the event which starts the race to the courthouse, provided it acts reasonably and does not contravene a statutory objective, *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 676, 70 S.Ct. 876, 881, 94 L.Ed. 1194 (1950); *Virginia Electric & Power Co. v. EPA,* 610 F.2d 187, 188 (4th Cir. 1979); *Southland Mower Co. v. Consumer Products Safety Comm'n,* 600 F.2d 12, 13 (5th Cir. 1979); *Industrial Union Dept., AFL–CIO v. Bingham,* 570 F.2d 965, 969 (D.C.Cir. 1977). Indeed, if the Commission had done so in the present case, its action might have foreclosed the issue before us. As the D.C. Circuit recently stated in a slightly different context in *International Union of Electrical, Radio and Machine Workers v. NLRB, supra,* 610 F.2d at 964,

"If the federal administrative agencies would promulgate straightforward regulations explaining how and when their reviewable orders are to issue, protracted procedural disputes born of the desire to win the race to the courthouse would largely be consigned to an early grave."

This comment is appropriate here. In the present case the Commission has not expressly fixed any date for the start of the race.

Even if there were an ambiguity as to which event started the race, it should be resolved in favor of the December 12, 1979, date rather than relegate parties in future contests to the uncertainties created by invocation of equitable considerations, which lead to repetitious filings of petitions for review and more frequent litigation, expensive to participants and burdensome to the courts, of the type encountered in proceedings under 28 U.S.C. § 1404(a). As Judge Newman notes, we should endeavor to eliminate the necessity for parties to rush to the courthouse every time an agency takes an action which could arguably be considered a final decision. See *Westinghouse Electric Corp. v. NRC*, 598 F.2d 759, 768 n. 35 (3d Cir. 1979); *BASF Wyandotte Corp. v. Costle*, 582 F.2d 108, 112 (1st Cir. 1978); *Outland v. CAB*, 284 F.2d 224, 228 (D.C.Cir. 1960). This is avoided by our holding that, absent a regulation fixing another date, the action taken at a public meeting of the type held in this case on December 12, 1979, is final for purposes of both §§ 2112 and 2344.

' For the reasons stated by Judge Newman we also concur in the holding that the petition for transfer should be denied.