**CITY OF GALLUP, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Public Service Company of New Mexico, Intervenor. (Four cases)**

Nos. 82–1069, 82–1075, 82–1099 and 82–1115.

United States Court of Appeals, District of Columbia Circuit.

March 11, 1983.

As Amended March 11, 1983.

Paul H. Keck, John T. Stough, Jr., and Michael F. Healy, Washington, D.C., were on the motion to dismiss and to transfer for intervenor, Public Service Co. of New Mexico.

Charles F. Wheatley, Jr., Philip B. Malter, Washington, D.C., and William Steven Paleos were on the motion in response to dismiss and to transfer, for petitioner, City of Gallup.

Jerome M. Feit and Arlene Pianko Groner, Federal Energy Regulatory Com'n, Washington, D.C., also entered appearances for respondent.

Before ROBINSON, Chief Judge, MacKINNON and EDWARDS *, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

These motions ask the court to function once again as finish-line umpires in a "race to the courthouse." The City of Gallup, New Mexico, seeks review in this court of an order of the Federal Energy Regulatory Commission setting rates for the Public Service Company of New Mexico. Meanwhile the company has filed petitions for review in the Tenth Circuit. The motions before us concern the question of which court first received a proper petition for review. The parties have given their best effort to the race, employing walkie-talkies, long-distance phone lines, split-second timing and cautious repetition. We dismiss

Gallup's earliest petitions because it jumped the gun. Of the remaining petitions, three have been filed within a half minute of each other. The first of these has been filed in the Tenth Circuit and may well be premature. Nonetheless, we transfer this court's remaining case to the Tenth Circuit, which can most properly decide whether the petition was filed too early.

## I. BACKGROUND

Review of decisions of the Federal Energy Regulatory Commission (FERC) under the Federal Power Act is provided for by section 313(b) of the Act and codified at 16 U.S.C. § 825*l* (Supp. V 1981). An aggrieved party may seek review only if he has petitioned for rehearing before the Commission. An application for rehearing is deemed to have been denied if the Commission does not act upon it within thirty days. *See* 16 U.S.C. § 825*l*(a). Judicial review may be sought in the court of appeals for the circuit in which the licensee or public utility is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia Circuit. *Id.* § 825*l*(b). Once FERC files the record of the proceeding with the court of appeals in accordance with 28 U.S.C. § 2112, that court gains exclusive jurisdiction to review the proceeding. *Id.*

Section 2112(a) of title 28 provides that when two or more petitions for review of an agency order are filed in different courts of appeals, the agency should file the record in the court of first filing. Other courts of appeals should then transfer any other petitions for review to that court. The court of first filing may then transfer the cases to any other court of appeals "[f]or the convenience of the parties in the interest of justice." 28 U.S.C. § 2112(a). The mechanical first-filing rule has led to a "race to the courthouse" among opposing parties with divergent forum preferences.

On November 9, 1981, FERC issued Opinion No. 133 in Docket No. ER78–338, *Public Service Company of New Mexico,* 17 F.E.

---

* Circuit Judge Edwards did not participate in the consideration and disposition of these motions.

R.C. ¶ 61,123 (1981). The opinion sets rates which the Public Service Company of New Mexico (PNM) may charge its customers, including the City of Gallup, New Mexico (Gallup). On December 9, Gallup filed a timely petition for rehearing, asserting that various errors had been made by the Commission.

By an order dated January 8, 1982, FERC granted the petition for rehearing for purposes of further consideration. Gallup has alleged that there was some irregularity in the issuance of this order: Gallup received notice of it quite a while after the effective date, and it was not on the Commission's call-in listing of recent orders. Because it did not realize that this order had been issued, Gallup filed on January 11, 1982, its first petition for review (No. 82–1042) based on the denial of the petition for rehearing by operation of law. When Gallup learned of the January 8 FERC order, it petitioned for and was granted withdrawal of this petition for review.[1]

On January 13, 1982, FERC held a public meeting concerning, *inter alia*, the application for rehearing, and it made a draft order available to the public. Gallup now characterizes this meeting as "deciding" to deny the application and making the order available to the public. PNM states that at the meeting FERC indicated its intention to deny the application for rehearing, but it decided to have the order redrafted and recirculated to the Commission for further voting. It is not listed on FERC's list of items on which action was taken at that meeting.

FERC normally issues its documents by posting them at 10:00 a.m. and 3:00 p.m. each day. Apparently Gallup anticipated that the denial of rehearing would be issued on January 20 because it filed in this court two petitions for review on that day, one at 9:05 a.m. (82–1069) and one at 3:01 p.m. (82–1075). Each petition for review referred to "the January 20, 1982 Federal Energy Regulatory Commission Order" that denied rehearing. FERC did not, however, issue a relevant order that day. Gallup

therefore moved on January 26 to withdraw the petitions for review because the petitions were "filed before a final order was issued by the Federal Energy Regulatory Commission." Since that time, Gallup has moved that a ruling on the motion be deferred until the court determines whether the Commission's actions were ready for review after the January 13 meeting.

On January 29, the race began for real. Apparently both Gallup and PNM anticipated that an order would be issued on that day. Each party had a representative with a two-way radio (walkie-talkie) stationed near the bulletin board on which the rehearing denial was likely to be posted. The Gallup walkie-talkie was monitored at the clerk's office in this court. PNM had a receiver at its attorney's offices next to an open long-distance phone line to the clerk's office of the Tenth Circuit, PNM's circuit of choice. In addition, PNM had another person roving the area at FERC, and a paralegal observing and timing the filing at this court's clerk's office.

Just before 3:00 p.m. (E.S.T.) on January 29, 1982, a FERC employee dropped a batch of orders into a box on a guard's desk and began to pin copies of those orders on the public bulletin board. A PNM paralegal riffled through the box, found the denial of rehearing, and signaled the man with PNM's walkie-talkie. The message was rapidly transmitted by radio and telephone to Denver, and PNM filed its first petition for review in the Tenth Circuit at 12:59:25 p.m. (M.S.T.) (2:59:25 p.m. (E.S.T.)) (10th Cir. No. 82–1122).

Half a minute later, the FERC clerk pinned the rehearing denial on the bulletin board. The air became filled with frantic signals. At this court, a Gallup representative received the awaited signal and yelled, "Now! Now!" to one of the docket clerks, who shoved the petition for review into a time clock (No. 82–1099). The time imprinted on the original is 2:59:50 p.m. (E.S.T.). The clock records in *tens* of seconds.

---

1. *City of Gallup v. FERC,* No. 82–1042 (D.C.Cir. Jan. 21, 1982).

In the clerk's office of the Tenth Circuit, a PNM representative also gave the signal, and a petition for review was again filed. (10th Cir. No. 82–1123). The handwritten time on the petition, signed by the Clerk of the Court, is 12:59:57.3 p.m. (M.S.T.) (2:59:57.3 p.m. (E.S.T.)). This was not, however, the end of the matter.

On February 3, 1982, FERC notified both PNM and Gallup that it considered all petitions filed before 3:00 p.m. on the 29th to be premature. This touched off another scramble to file new petitions for review. PNM won handily, filing No. 82–1148 in the Tenth Circuit at 9:35 a.m. (M.S.T.) (11:35 a.m. (E.S.T.)), while Gallup filed No. 82–1115 in this court at 11:44:50 a.m. (E.S.T.). Gallup cries foul, however, alleging that FERC must have tipped off PNM in light of how fast they filed.

FERC then filed a motion to dismiss Gallup's earlier petitions for review, based on an affidavit by its employee who pinned the order to the bulletin board. The employee stated that she waited until the clock on the wall indicated 3:00 p.m. before posting the denial of rehearing. When it came to light that the clock had been taken down that day to facilitate painting, FERC withdrew its motion to dismiss and requested that either this court or the Tenth Circuit direct it where to file the record. Gallup views this incident as a further effort by FERC to deny it a fair race to the courthouse.

PNM has moved that this court dismiss Gallup's first three petitions for review: the petition that has been withdrawn, and the two filed on January 20 in anticipation of an order. It also moves for transfer of the two remaining petitions to the Tenth Circuit on the basis of its first filing upon finding the order in the guard-desk box. Alternatively, it urges transfer based on the Tenth Circuit's familiarity with similar PNM cases.

Gallup opposes these motions and requests a determination that jurisdiction to review the FERC proceeding rests in this court. It requests a declaratory order that FERC should file the record in this court. PNM, of course, opposes this motion.

The following summary of petitions filed is provided for reference:

| | | |
|---|---|---|
| 82–1042 | Jan. 11 | Gallup files thinking that its application for rehearing was denied by operation of law. This petition has been withdrawn. |
| 82–1069 82–1075 | Jan. 20 | Gallup files these petitions to review a nonexistent denial dated January 20. No FERC order was issued. Gallup's motion to withdraw has been held in abeyance. |
| 82–1122 (10th Cir.) | Jan. 29 | 12:59:25 p.m. (M.S.T.) PNM files when it finds a copy of the order denying rehearing in a box on the desk of a guard. |
| 82–1099 | Jan. 29 | 2:59:50 p.m. (E.S.T.) Gallup files in this court after the order is pinned to the bulletin board. |
| 82–1123 (10th Cir.) | Jan. 29 | 12:59:57.3 p.m. (M.S.T.) PNM files in the Tenth Circuit after the order is posted. |
| 82–1148 (10th Cir.) | Feb. 3 | 9:35 a.m. (M.S.T.) PNM files upon FERC notification that its other petitions may be premature. |
| 82–1115 | Feb. 3 | 11:44:50 a.m. (E.S.T.) Gallup files in this court upon similar notification. |

## II. DISCUSSION

Judicial review of an order of the Federal Energy Regulatory Commission is controlled by 16 U.S.C. § 825l (Supp. V 1981). Within sixty days after the Commission's action on the mandatory application for rehearing, a party aggrieved may file a petition for review in the "United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia." 16 U.S.C. § 825l(b). FERC must file the record of the proceeding in accordance with 28 U.S.C. § 2112 and upon the filing of the record, the court of appeals gains exclusive jurisdiction to review the Commission's order.

Section 2112(a) of title 28 provides that the first petition filed will determine where the agency should file the record when petitions for review are filed in more than one circuit:

If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings

are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals. 28 U.S.C. § 2112(a).

■ Two determinations are necessary under this section. The court of first filing must be established, and then, once all petitions have been consolidated in that court, it must be determined whether the "convenience of the parties in the interest of justice" counsels transfer to yet another circuit. Section 2112(a) creates a mechanical rule designed to prevent the agency from choosing the forum for review by filing the record as it pleased. *See United Steelworkers of Am. v. Marshall,* 592 F.2d 693, 696 (3d Cir.1979). The official notations of time are, absent extraordinary circumstances, conclusive as to the times of filing. *Id.*

At base, the process is essentially mechanical, and a priority of one minute has been held to be sufficient to designate a court as the court of first filing. *See Southland Mower Company v. United States Consumer Product Safety Comm.,* 600 F.2d 12, 13–14 (5th Cir.1979). This court has expressed doubt concerning the relevance of a two-second priority, but passed over the question by transfering in light of similar cases occurring in the competing forum. *See Municipal Distributors Group v. FPC,* 459 F.2d 1367, 1368 (D.C.Cir. 1972). When petitions for review have been filed simultaneously in different courts of appeals, the courts involved will work out a method of determining which court should decide the proper location for filing of the record. *See, e.g., American Public Gas Ass'n v. FPC,* 555 F.2d 852, 857 (D.C.Cir.1976) (Fifth Circuit allowed D.C. Circuit to decide proper location for cases); *Natural Resources Defense Council, Inc. v. EPA,* 673 F.2d 392, 396 (D.C.Cir.1980) (circuit courts randomly determined in which court the record would be filed).

In this case, the validity of many of the petitions has been questioned. In *Allied-General Nuclear Serv. v. NRC,* No. 78–1144 (D.C.Cir. July 26, 1978) (per curiam), we transferred a case to the Third Circuit, where an earlier but arguably premature petition had been filed, in order to allow that court to determine whether the first-filed petition was premature. This practice, having the court where the first petition was filed—validly or invalidly—determine the validity of that petition, received apparent approval in the Third Circuit's decision on the merits of the transferred case. *Westinghouse Elec. Corp. v. NRC,* 598 F.2d 759, 767–68 (3d Cir.1979).[2]

■ The process contemplated by this procedure is that each court will dismiss any invalid petitions before it and then transfer the remaining cases to another circuit if that circuit holds an earlier filed case, even if that case is arguably invalid. When a court finds it has a valid and first-filed petition, it will then order the commission to file the record with it. After the other circuits have transferred their later-filed cases to that circuit, it will decide whether a different venue is appropriate under the convenience-and-justice standard. We follow this procedure in this case.

### A. The Petitions Filed Before January 29

Gallup's first petition for review was filed on January 11 and has been withdrawn. Therefore the motion to dismiss that petition, No. 82–1042, is denied as moot.

Gallup's next two petitions were filed in clear anticipation that the denial of rehearing would be issued on January 20. The petition refers to an order of that date, and soon thereafter Gallup filed a motion to withdraw, now held in abeyance. Nonetheless, Gallup argues that the petitions were not premature because the meeting on January 13 constituted issuance of the decision to deny rehearing.

---

**2.** In that case, however, the court passed over the validity question and assumed this court

had relinquished any participation in choosing the forum. 598 F.2d at 768.

There is some support for the position that a public announcement may start the race to the courthouse, even though the order involved is not publicly released until later. In *Industrial Union Department, AFL–CIO v. Bingham,* 570 F.2d 965 (D.C. Cir.1977), a divided motions panel of this court held that a meeting of most interested parties to announce and sign emergency, temporary benzene regulations was sufficient "promulgation" to allow filing of a petition for review, even though the public press-conference announcement occurred half an hour later. Judge Leventhal rested his decision on a number of factors: the regulations were in fact signed into effect at the meeting; no favoritism occurred in the selection of participants in the meeting; the agency urged that the meeting was promulgation; the party who petitioned for review did so in good faith, and would have had ample time to file again before the next petition was filed eleven days later. *Id.* at 968–71. Judge Fahy concurred in this result stressing the fairness of the procedures and the agency's own interpretation. *Id.* at 976–79 (Fahy, J., concurring in part and dissenting in part). Judge Wilkey disagreed because *all* interested persons were not given equal opportunity to seek immediate review. *Id.* at 975–76 (Wilkey, J., concurring in part and dissenting in part).

In *ITT World Communications, Inc. v. FCC,* 621 F.2d 1201 (2d Cir.1980), the Second Circuit held that a meeting at which the Federal Communications Commission adopted an order and put it into effect was sufficient to start the race to the courthouse, even though the full text of the decision was not made available to the public until three weeks later. Unlike the case before us, the decision was listed on the summary minutes of the meeting and a news release announced and described the decision. *See id.* at 1203. The majority of the panel stressed that the order became effective immediately and that it was final and unambiguous. *Id.* at 1209. The court also noted that the agency may have had the authority to specify the event which starts the race to the courthouse, but had failed to do so. *Id.*

Both of these cases cite *Saturn Airways, Inc. v. CAB,* 476 F.2d 907 (D.C.Cir.1973), in which this court held that a petition for review was not premature when it was based on a news release announcing an agency decision in detail, even though text of the order was not released to the public until later:

> For at the time of the filing it was clear both that the Board has taken what it deemed official action and that the substance of that action had been communicated to the public in some detail.

*Id.* at 909.

 From these cases may be culled common factors which would justify a petition for review upon less than release of the formal order appealed:

(1) The decision has actually been made;

(2) The decision has been made effective;

(3) The decision has been communicated to the public or to a reasonable cross-section of the interested parties; and

(4) The decision has been described in detail.

Despite the arguments made by Gallup, none of these factors is present here; the petitions filed on January 20 are dismissed as premature (Nos. 82–1069 & 82–1075).

Gallup alleges that FERC had announced that it would discuss and decide the applications for rehearing on January 13. It also states that the Commission made the Order denying rehearing available and agreed that the rehearing would be denied. PNM states that the outcome of the meeting was a decision to reexamine the draft order and to vote once again. As PNM notes, the relevant docket is not on the list of those items on which action was taken at the meeting, and further, the Commission's order is not as of that date. Although Gallup cites precedent stating that "an interested party with actual notice of the decision should be able to seek immediate review of it, for it is binding upon him," *Int'l Union of Elec., Radio & Mach. Workers v. NLRB,* 610 F.2d 956, 961 (D.C.Cir.1979), it appears that in this case no decision had been made as yet and it was not "binding" on anyone.

Gallup also cites precedent which defines a final order as one which imposes an obligation, denies a right or fixes some legal relationship, *Chicago & So. Air Lines v. Waterman S.S. Co.,* 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948), and will not disrupt the orderly process of adjudication, *Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209–210, 27 L.Ed.2d 203 (1970). Neither aspect is present here. First, since the denial which may have been anticipated from the conduct of the meeting had not yet been issued in its final form and that final form had not yet been determined, the Commission would have been free to alter its tentative conclusion. Second, since the Commission intended to review again the denial and to vote again upon it, judicial review at that stage could be very disruptive indeed. The reasons stated by the agency for its actions are an essential element of judicial review, and they would be lacking if review went forward upon a statement by the Commission concerning its intended action without final determination or explanation. Circulation to interested parties of a draft order in advance of the final decision on the order is a useful agency procedure which should not be hampered by the possibility that a party will seize upon the tentative document as a basis for judicial review.

In sum, the meeting of January 13 does not constitute issuance of a final decision to deny rehearing. A decision becomes a final decision when it is both complete and passes out of the control of the authority by being released to the interested parties or to the public in decisional form without any immediate intention of recall or reconsideration.[3] These elements are lacking in this case.

Gallup also argues that the meeting should be treated as constructive issuance of the denial of rehearing because the agency did not follow its own regulations on promulgation of orders. Commission regulations state that the date of issuance is the day that the Secretary of the Commission mails or delivers a copy of the order to the parties.

Orders will not be made public prior to the mailing or delivery to the parties or their attorneys of record except where, in the judgment of the Commission, the public interest so requires.

18 C.F.R. § 1.13 (1980). Gallup seems to reason that the Commission must notify the parties of the public interest determination before releasing an order to the public. Then, because the parties were not informed of FERC's intent to post the order on January 29, it finds a violation of the regulation because no notification was given of that release and no service by mail or otherwise followed the meeting. This argument chases its tail.

First, there is no support in the regulations or Gallup's moving papers for the proposition that the Commission must notify the parties before informing the public in advance of service on the parties of a decision. Second, there is no indication that the meeting was intended to be an issuance of an order by FERC or that any of the parties so regarded it, except in self-serving hindsight. Finally, even if all the premises were correct, it is not clear that this would create a "constructive issuance." Gallup cites for the concept of constructive issuance *Saturn Airways,* which dealt with a press release announcing immediately effective regulations in detail, and *Bingham,* which dealt with a meeting at which regulations were signed into effect. Yet those cases do not depend on a failure to follow regulations as a basis for choosing some earlier act as issuance. Instead, each case finds the essential elements of a final order in the content and effect of the promulgation and in the process found to constitute issuance. We reject the constructive issuance argument.[4]

---

3. We also would not consider release of a partial decision to constitute a final decision.

4. Gallup also argues that it is not a fatal defect that its January 20 petitions for review mention a denial of rehearing on that date. Since the petitions are premature, it is not necessary to reach the question.

■ Gallup also contends that its first petitions, whether or not their validity is in dispute, should determine that this court make the choice of forums. It cites a statement of Chief Judge Bazelon, joined by Judge Wright, appended to a denial of rehearing en banc. *See Abourezk v. FPC,* 513 F.2d 504 (D.C.Cir.1975) (statement of Bazelon, C.J.). Judge Bazelon urges in *Abourezk* that courts not attempt to determine whether time stamps are accurate and synchronized for the purpose of first filing, but rather consolidate all petitions based on the times as marked, despite allegations of inaccuracy. *Id.* at 505. Gallup misconstrues this to mean that invalid and clearly premature petitions for review should be accorded priority in the race to the courthouse. Judge Bazelon does suggest that a petition that is time-stamped slightly before the official time of an order's issuance should be taken as valid. He does not counsel that petitions filed over a week before promulgation should be allowed to determine which court will make the venue decision.

Gallup's petitions filed before January 29 are premature and are dismissed.

### B. *The Petitions Filed January 29*

On January 29, the day FERC issued the relevant denial of rehearing, three petitions for review were filed. PNM filed in the Tenth Circuit when a copy of the order was placed in a box on the desk of a guard (10th Cir. No. 82–1122). About twenty-five seconds later the decision was posted on FERC's bulletin board, after which PNM filed in the Tenth Circuit and Gallup filed here. Although Gallup's petition is time-stamped seven seconds earlier than PNM's, it is impossible to tell which was in fact first because this court's clock registers only tens of seconds. Since the January 20 petitions are invalid, these three petitions must determine which court had the first filing.

Gallup asserts that PNM's first petition was premature because the Order was not publicly issued until posted. As Gallup notes, the Order was simply one of many placed in a box at the guard's desk just prior to posting, and only one representative at a time could ascertain whether a particular order was included in the stack. Even though posting makes visible only the front page of the order, as argued by PNM, the box approach lacks certainty and regularity. In *ITT World Communications, Inc. v. FCC, supra,* at least one judge reasoned in that way in rejecting the use of the release date of an opinion in favor of an earlier announcement at a meeting:

> The opinion was released by the Commission about one-and-a-half hours before its announced time for releasing public documents. Rather than being time-stamped, it was simply left on a counter, with a note beside it indicating the time of release. Casual practice such as this hardly seems an appropriate basis for determining the rights of competing litigants; it is far too conducive to uncertainty, confusion, and administrative irregularity.

621 F.2d at 1205–06 (Newman, J., concurring).

■ We do not decide the issue, however. It is for the court in which the petition was filed to determine whether it is invalid. *Municipal Distributors Group v. FPC,* 459 F.2d 1367, 1369 (D.C.Cir.1972); *see also Chatham Mfg. Co. v. NLRB,* 404 F.2d 1116, 1118 (4th Cir.1968) (Haynsworth, C.J.) (holding that the court in which petition was filed should determine whether filing party was truly aggrieved). It would be precipitous for one court to act on its opinion of the validity of another court's case.

There has been no indication from the parties that the Tenth Circuit has decided whether the PNM's first petition was premature. It may well be that the court is waiting for this court's decision concerning the earlier Gallup filings. This leaves us with three alternatives: (1) wait until the Tenth Circuit makes a decision on the first PNM filing; (2) consider all the petitions to be simultaneous, and contact the other circuit to designate one of them to determine where the case should be heard; and (3) transfer this court's case or cases to the Tenth Circuit since it now appears to be the court of first filing.

We adopt the third choice. Clearly the waiting option could stretch on interminably. Were we to consider all petitions as simultaneous, we would risk violating a sister court's province to decide the effect of a petition filed with that court. Further, there is no dispute that PNM's first petition was filed before Gallup's petition on January 29. To the extent that section 2112 creates a mechanical method of forum resolution, it seems most appropriate to allow it to apply to the extent that the order of filing is not in dispute, even though the actual time involved is not meaningful in an equitable sense.

We do not direct filing of the record at this time. We do not necessarily intend to relinquish any participation in the choice of forum decision should the Tenth Circuit decide that the first PNM petition is premature and the other two are simultaneous. In such a case, we would expect that that court would contact this court informally to designate one of the courts to make the choice of forum.

Finally, we *sua sponte* dismiss Gallup's petition of February 3 (No. 82–1115). Because there is no assertion that Gallup's January 29 petition is premature, the next petition is duplicative. In the interest of administrative ease, it is dismissed before the remaining case is transferred to the Tenth Circuit.

CONCLUSION

Congress has mandated that the first filed petition will determine the court which chooses the venue of agency review. This case demonstrates the difficulties of administering such a system when faced with zealous representatives employing modern technology. Yet, until Congress

changes the present scheme, courts must deal with the situation as best they can.[5] The approach to multiple filings which we employ in this case has been used in the past with success and should speed resolution of similar problems in the future.

We deny the motion to dismiss No. 82–1042 as moot because that petition for review has been withdrawn. We grant the motion to dismiss Nos. 82–1068 and 82–1075 because they were filed before the FERC denied rehearing. We *sua sponte* dismiss No. 82–1115 as unnecessarily duplicative. We grant the motion to transfer to the Tenth Circuit as to the remaining petition for review, No. 82–1099. That court currently has an arguably valid petition for review filed before 82–1099. The Gallup motion for determination of jurisdiction and declaratory order is denied.

*So ordered.*

**5.** We note that the 97th Congress endeavored to amend the venue provisions of 28 U.S.C. § 2112(a). The Senate, on March 24, 1982, passed, by a 94–0 vote, a regulatory reform bill providing that when proceedings are instituted in two or more courts of appeals with respect to the same agency action and the first such proceeding is not filed more than five days before the institution of a later proceeding, the Administrative Office of the United States Courts would randomly select the court in which the record would be filed. S. 1080, 97th Cong., 2d Sess. § 6(a) (1982). The Judiciary Committee of the House of Representatives, on February 25, 1982, reported out a similar provision in its own regulatory reform bill, providing for random selection by the Administrative Office when proceedings are instituted in two or more courts of appeals within ten days after issuance of the agency's order. H.R. 746, 97th Cong., 2d Sess. § 204(a) (1982).