NEWSWEEK, INC. and Time, Inc., Petitioners,

v.

UNITED STATES POSTAL SERVICE, Respondent.

MAGAZINE PUBLISHERS ASSOCIATION, INC., Petitioner,

v.

UNITED STATES POSTAL SERVICE, Respondent.

Nos. 1567–9, 1570, Docket 81–4035, 4037, 4047 and 4075.

United States Court of Appeals, Second Circuit.

Argued April 28, 1981.

Decided June 12, 1981.

Robert L. Kendalls, Jr., Philadelphia, Pa. (Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Bernard G. Segal, Irving R. Segal, Philadelphia, Pa., of counsel), for intervenor United Parcel Service of America, Inc.

Toni K. Allen, Washington, D. C. (Wald Harkrader & Ross, Washington, D. C., Jay A. Resnick, Washington, D. C., of counsel), for petitioner Newsweek, Inc.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City (Charles M. Waygood, New York City, and Justin R. Wolf, Louise C. Powell, Washington, D. C., of counsel), for petitioner Time, Inc.

Before MANSFIELD and VAN GRAAF-EILAND, Circuit Judges, and SWEET,* District Judge.

PER CURIAM:

Intervenor United Parcel Service, Inc. ("UPS") moves to dismiss or transfer petitions filed in this Court by Newsweek, Inc. ("Newsweek"), Time, Inc. ("Time"), and Magazine Publishers Association, Inc. ("MPA") for review of a decision of the Board of Governors of the United States Postal Service ("Governors" or "Postal Service") approving a general postal rate increase. Four petitions for review of the same decision, including one by UPS, were filed in the Court of Appeals for the District of Columbia Circuit. At issue is whether the Newsweek and Time petitions, the first to be filed, were premature and whether, even if this Court has jurisdiction by virtue of the temporal priority of the Newsweek and Time petitions, for the convenience of the parties and in the interest of justice all three petitions filed here should be transferred to the District of Columbia Circuit. See 28 U.S.C. §§ 2112, 2344. The motions are denied. We conclude that Newsweek and Time have properly run—and won—the race to the courthouse. Further, the petitions here filed, together with the four consolidated petitions filed in the D.C. Circuit Court and

Whitman & Ransom, New York City (John M. Burzio and Hydeman, Mason & Goodell, Washington, D. C., of counsel), for petitioner Magazine Publishers Association, Inc.

Frances G. Beck, Washington, D. C., Asst. Gen. Counsel, for respondent United States Postal Service.

* United States District Judge for the Southern District of New York, sitting by designation.

transferred here on the motion of Newsweek by order of that Court on April 28, will remain in this Court to be adjudicated.

## I.

Pursuant to the Postal Reorganization Act of 1970, 39 U.S.C. § 3601 *et seq.* (the "Act"), on April 21, 1980 the Postal Service filed with the Postal Rate Commission ("the Commission") a request for a recommended decision on changes in the postal rates. *Id.* § 3622. The Commission held hearings on the request of the Postal Service, and transmitted its opinion and recommended decision to the Governors on February 19, 1981.[1] *Id.* § 3624. On March 10, 1981 the Governors issued their decision to "under protest, allow [the] recommended decision of the Commission to take effect . . . ." *Id.* § 3625(a), (c). The decision of the Governors "in writing," including the administrative record and resolutions setting the effective date for the rate changes, was "made generally available" on that date at a public meeting at Postal Service headquarters in Washington, D. C. *Id.* § 3625(e). That subsection provides that the Governors' decision and the record "shall be printed and made available for sale by the Public Printer within 10 days following the day the decision is issued." In fact, on March 20, 1981, the Government Printing Office ("GPO") made available to the public a microfiche of the text of the decision, but the GPO apparently did not have available for sale on that date a printed copy of the decision. Pursuant to the terms of the decision, the new rates became effective two days later, on March 22, 1981.

At 1:35 P.M. on March 10, four minutes after copies of the decision were time-stamped and distributed at Postal Service headquarters, Newsweek filed its petition for review in this Court. Time filed its petition here four minutes later. On March 23, the Council of Public Utility Mailers and UPS filed petitions in the District of Columbia Circuit. Petitions were also filed in

that Court by the March of Dimes Birth Defects Foundation on March 27, and by the Readers Digest Association on April 3. Also on March 27 MPA filed its petition in this Court.

## II.

■ Sections 2112(a) and 2344 of Title 28 U.S.C., the latter relating to finality and venue, determine the proper court for appellate review of administrative decisions. 28 U.S.C. § 2112(a) provides, in part:

> If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.

Under § 3628 of the Act, 39 U.S.C. § 3628, a decision of the Governors "may be appealed to any court of appeals of the United States, within 15 days after its publication by the Public Printer, by an aggrieved party who appeared in the proceedings under section 3624(a) of this title." UPS contends that under the Act and the applicable provisions of 28 U.S.C., the petitions of Newsweek and Time were prematurely filed and that its own petition, along with that of the Council of Public Utility Mailers, filed on March 23 in the D.C. Circuit, were the first ones validly invoking appellate jurisdiction. It is apparently conceded that for purposes of review the decision was final when issued on March 10. UPS presses, however, that the publication date, March 20, was the more "neutral" and "reasonable" starting bell for the priority race. In rejecting the position of UPS we

---

1. Postal Rate and Fee Changes, 1980, Postal Rate Commission Dkt. No. R 80-1. *See* 46 Fed.Reg. 13873 (Feb. 24, 1981).

use reasoning similar to that applied by this Court in *ITT World Communications, Inc. v. FCC*, 621 F.2d 1201, 1209–10 (2d Cir. 1980) (Mansfield, J. concurring) to a closely analogous dispute.

As stated by Judge Newman in *ITT World, supra*, 621 F.2d 1201, 1204 (2d Cir. 1980):

> The order appealed from must be sufficiently "final" to be reviewable under § 2344 and it must be sufficiently "final" to serve as the starting bell for the priority race under § 2112. When a court is required to choose between two petitions seeking review of the same order, these two aspects of finality will correspond; if the order is sufficiently final to be reviewable, it is sufficiently final to serve as the starting bell.

> The basic elements of finality are:

> whether the process of administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970); *Environmental Defense Fund, Inc. v. Johnson*, 629 F.2d 239, 241 (2d Cir. 1980).

While the provision in 39 U.S.C. § 3628 for appeal of a decision of the Governors "within 15 days after its publication by the Public Printer" may be interpreted as setting forth the trigger (publication) and the end point for appeal, *cf.* Notes of the Advisory Committee on Appellate Rules to the 1979 Amendment of Fed.R.App.P. 4(a)(1), the phrase is as easily interpreted as merely setting forth the outer bound of time for appeal. The latter view appears the more reasonable, given the absence of a Postal Service regulation corresponding to § 3628 flagging publication as the start of time for appeal, the absence of controlling legislative history, the practice of the agency, and the certainty engendered by the Governors' decision. Section 3625(e) of the Act provides:

> The decision of the Governors to approve, allow under protest, reject, or modify a recommended decision of the Commission shall be in writing and shall include an estimate of anticipated revenue and a statement of explanation and justification. The decision, the record of the Commission's hearings, and the commission's recommended decision shall be made generally available at the time the decision is issued and shall be printed and made available for sale by the Public Printer within 10 days following the day the decision is issued.

Issuance of a decision of the Governors, such as occurred here on March 10, 1981, therefore satisfies all requisites of finality. The administrative process has culminated in an authoritative decision of the Governors. Rights and obligations—legal consequences—flow from the Governors' action. *See Port of Boston, supra*. Although such a decision is not necessarily—and was not in this case—effective immediately upon issuance, *compare ITT World, supra*, at 1209, there is no set effective date after issuance of Governors' decisions to serve as a more logical trigger. *See* 39 U.S.C. § 3625(f). Moreover, the event of issuance, as evidenced by what transpired on March 10, is sufficiently unambiguous to serve as the trigger for appeal. The decision of the Governors together with the administrative record was distributed at a time certain at a public meeting. *ITT World, supra*, at 1209. In contrast, it appears that publication does not afford such certainty. The statute does not provide that publication of a decision shall be on a certain date, only that it shall take place within ten days of issuance. There apparently is no provision for advance notice of publication and availability for sale. Further, according to the unrebutted affidavit of counsel for Newsweek, here only a microfiche of the decision was published and made available for sale on March 20, with some days wait necessary for purchase. This is the kind of "[c]asual practice" which "hardly seems the basis for determining the rights of competing litigants." *Id.*, 1205–06, 1210.

The legislative history of the Act does not establish a different view. At page 16 of S.Rep. No. 912, 91st Cong., 2d Sess. (1970) the pertinent language merely repeats that of § 3628 of the Act. A comment of Representative Udall while tracing the path of a "typical rate case" before the House vote on the Conference Report is similarly unrevealing. 116 Cong.Rec. 27606 (1970).

The Postal Service itself, which has filed papers in opposition to the motions of UPS, takes a position consistent with that adopted herein. While the Postal Service is of course a party to this action,[2] deference is due the interpretation given a statute by the agency charged with its administration. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Kyle v. ICC*, 609 F.2d 540 (D.C.Cir.1980). According to the unrebutted affidavit submitted by the Postal Service, it has never challenged any of the many appeals from decisions of the Governors filed after issuance but before publication. Thus, agency practice as well has been in keeping with our conclusion that decisions of the Governors are appealable beginning at the time of issuance and ending 15 days after publication by the Public Printer.

Since the date of publication apparently is not widely publicized, this rule allows for some uncertainty as to the final day for appeal, but better that than uncertainty as to the starting date. While the race to file appeals within minutes of major agency action may be unseemly, *see Industrial Union Dep't, AFL–CIO v. Bingham*, 570 F.2d 965, 970 (D.C.Cir.1977) (Leventhal, J.); *Saturn Airways, Inc. v. CAB*, 476 F.2d 907, 910 (D.C.Cir.1973), this Court recently observed that "the hastiness of the filings is inevitable whenever the selection among circuits depends upon a race, regardless of what event starts the race." *ITT World, supra,* at 1205; *see also Virginia Elec. & Power*

*Co. v. EPA*, 610 F.2d 187, 188 & n.2 (4th Cir. 1979).

### III.

■ Having concluded that the petitions of Newsweek and Time were timely filed as the first appeals from the Governors' decision, this Court has determined that the three petitions filed here, together with the four petitions transferred here on April 28 by order of the D.C. Circuit, should remain here to be adjudicated. 28 U.S.C. § 2112(a). *See Industrial Union Dep't, AFL–CIO v. Bingham, supra,* at 971.

■ UPS urged the location of counsel for most of the interested parties in the District of Columbia as a controlling factor in the determination of proper venue under 28 U.S.C. § 2112(a). *See United Steelworkers of America, AFL–CIO–CLC v. Marshall,* 592 F.2d 693, 697 (3d Cir. 1979); *Industrial Union Dep't, AFL–CIO v. Bingham, supra,* at 971. However, counsel for Newsweek represents that of the twenty-two parties directly involved in the various appeals from the Governors' decision, twelve have their principal office within this Circuit, four in the District of Columbia, and six elsewhere. "Considerations of convenience center around the physical location of the parties." *ITT World, supra,* at 1208 (citations omitted); *see* 28 U.S.C. § 2343. The location of the Postal Service in the District of Columbia is of no special significance given the choice of forum provided by § 3628 of the Act, nor is the Court of Appeals for the District of Columbia Circuit to be considered "expert," and thus preferable. *See ITT World, supra,* at 1208; *United Steelworkers of America, AFL–CIO–CLC v. Marshall, supra.* The interest of justice favors retention of jurisdiction in the forum chosen by an aggrieved party where, as here, Congress has given him a choice.[3]

2. Implicit in 28 U.S.C. § 2112 is Congress' design to prevent federal agencies from selecting the forum for review of its decisions by filing the record in the court of its choice. *Natural Resources Defense Council v. EPA*, 15 Envir. Rep. Cases (BNA) 1157, 1161–62; *ITT World,*

*supra,* at 1206 n.7; *Eastern Air Lines v. CAB,* 354 F.2d 507, 511 (D.C.Cir.1965).

3. The Conference Report on the Act contains the following explanation for § 3628:

The House bill provided that the final decision of the Postal Service on rate and classifi-

244

*Pan American World Airways, Inc. v. CAB,* 380 F.2d 770, 775 (2d Cir. 1967), *aff'd sub nom. World Airways, Inc. v. Pan American World Airways, Inc.,* 391 U.S. 461, 88 S.Ct. 1715, 20 L.Ed.2d 748 (1968); *see Westinghouse Elec. Corp. v. NRC,* 598 F.2d 759, 766 (3d Cir. 1979); *Tenneco Oil Co. v. EPA,* 592 F.2d 897, 900 (5th Cir. 1979).

UPS argued for transfer on the basis of the pendency in the Court of Appeals for the D.C. Circuit of petitions for review of certain other Postal Service actions of limited scope and on different records and dockets, albeit involving some similarity of issues with the instant appeals. We note that on May 5 and May 22 that Court decided the cases cited in this respect by UPS. These are *National Easter Seal Society v. United States Postal Service,* Nos. 80–1491, 1492 (D.C.Cir. May 5, 1981) and *Dow Jones & Company, Inc. v. United States Postal Service,* Nos. 80–2285, 2286, 2287, 2288, 2289, 2300 (D.C.Cir. May 22, 1981). In any event the relation between the instant appeals and those recently pending in the D.C. Circuit was not sufficient to require a transfer in the interest of justice even during the pendency of those appeals. *See ITT World, supra,* at 1208–09; *Public Service Comm'n of New York v. FPC,* 472 F.2d 1270, 1272 (D.C.Cir.1972); *Pan American World Airways, Inc. v. CAB, supra,* 380 F.2d at 774. *Compare Natural Resources Defense Council v. EPA,* 15 Envir.Rep. Cases (BNA) 1157, 1163–64 (D.C.Cir.1980); *Int'l Union of Elec. Workers v. NLRB, supra,* 610 F.2d at 964; *United Steelworkers of America, AFL–CIO–CLC v. Marshall, supra,* at 697–98; *American Tel. & Tel. Co. v. FCC,* 519 F.2d 322 (2d Cir. 1975). Thus, the considerations of convenience of the parties and the interest of justice coincide and favor this Court's retention of jurisdiction over and adjudication of all seven petitions.

cation changes would be subject to judicial review by United States Court of Appeals on questions of law and procedure. The Senate amendment provided that such decisions would be subject to judicial review by the United States Court of Appeals for the District of Columbia Circuit on questions of law, procedure, and substantiality of the evidence.

## IV.

For the reasons set forth herein, we deny the motion of UPS to dismiss the petitions of Newsweek and Time as premature, as well as the alternative motion of UPS to transfer those petitions and the petition of MPA to the D.C. Circuit. The Postal Service will accordingly be directed to file the record in this Court. The Clerk is instructed to expedite oral argument. 39 U.S.C. § 3628.

The conference substitute adopts the Senate provision with an amendment providing for review in any appropriate United States Court of Appeals.
Conf. Rep. No. 1363, 91st Cong., 2d Sess. *reprinted in* [1970] U.S.Code Cong. & Ad.News, 3649, 3712, 3719.