773 F.2d 375
 84 A.L.R.Fed. 357, 249 U.S.App.D.C. 112,
54 USLW 2189
 WESTERN UNION TELEGRAPH CO., MCI Telecommunications
Corporation and Mountain State Telephone and
Telegraph Co., et al., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
 Nos. 84-1177, 84-1641, 84-1642, 85-1115, 85-1124, 85-1148,
85-1151, 85-1170, 85-1183, 85-1204 and 85-1300.
 United States Court of Appeals,
District of Columbia Circuit.
 Oct. 4, 1985.
 
 Petitions for Review of Orders of the Federal Communications commission.
 Michael H. Bader, Kenneth A. Cox, William J. Byrnes, Thomas R. Gibbon, Theodore D. Kramer and John M. Scorce, Washington, D.C., were on the motion to dismiss for petitioner MCI Telecommunications Corp.
 Judith A. Maynes, Robert B. Stechert, Daniel Stark, Jules M. Perlberg, Jonathan S. Hoak, Howard J. Trienens and Alfred A. Green, Chicago, Ill., were on the opposition to the motion for petitioner American Tel. and Tel. Co.
 John E. Ingle, Deputy Associate Gen. Counsel, F.C.C., Washington, D.C., was on the response to the motion to dismiss for respondent F.C.C.
 Before MIKVA, BORK and SCALIA, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SCALIA.
 SCALIA, Circuit Judge:
 
 
 1
 This motion presents the question whether this court must dismiss for lack of jurisdiction a petition filed before the order of which it seeks review was "entered" as that term is defined by statute and regulation.
 
 
 2
 * On March 1, 1985 the FCC adopted an order entitled "Investigation of Access and Divestiture Related Tariffs." The order was released to the public on March 8. On March 15, the American Telephone and Telegraph Company ("AT&T") filed a petition for review in this court. The order was not published in the Federal Register until March 21. 50 Fed.Reg. 11,440. MCI Telecommunications Corporation ("MCI") moves to dismiss AT&T's petition as prematurely filed.
 
 
 3
 Our jurisdiction to review this order is defined by 28 U.S.C. Sec. 2344 (1982), which provides that the petition for review must be filed within sixty days after "entry" of the order. FCC orders like that at issue here are deemed to be "entered" for purposes of Sec. 2344 on "the date upon which the Commission gives public notice of the order," 47 U.S.C. Sec. 405 (1982). An FCC regulation defining the time of public notice of agency action provides that, with respect to orders of this type, public notice occurs at "3 P.M. Eastern Time on the day after ... the date of publication in the FEDERAL REGISTER." 47 C.F.R. Sec. 1.4(b) (1984). MCI argues that the statutes and regulation combine to demarcate a precisely defined period within which AT&T's petition was required to have been filed, beginning at 3:00 p.m. the day after publication in the Federal Register of the order it challenged and ending sixty days later. Because that sixty-day period "is jurisdictional in nature, and may not be enlarged or altered by the courts," Natural Resources Defense Council v. NRC, 666 F.2d 595, 602 (D.C.Cir.1981) (citations omitted), MCI concludes that AT&T's petition, filed seven days before the beginning of the period, must be dismissed for lack of jurisdiction.[1]
 
 
 4
 AT & T replies that it was not required to wait until commencement of the prescribed period to seek review, because the order was effective immediately upon its release to the public on March 8 and was therefore ripe for review on that date. Even if the premise of effectiveness and ripeness is correct (which we need not decide), the conclusion of immediate reviewability does not follow. It is not a principle of law that all agency action must be reviewable as soon as it is effective and ripe--or indeed that all agency action need be reviewable at all. Here the governing statutes, 28 U.S.C. Sec. 2344 and 47 U.S.C. Sec. 405, provide that review is unavailable until the date the Commission gives public notice, whether or not the order becomes effective and otherwise ripe before then; and we have neither been referred to nor can conceive of any constitutional obstacle to that disposition in the circumstances of this case.
 
 
 5
 AT&T asserts, however, that the purpose of timeliness requirements is to ensure that late petitions do not "endanger the finality of agency orders," Opposition to Motion to Dismiss for AT&T at 4 n. * *; and that since premature petitions do not frustrate that purpose they are not jurisdictionally barred. Since we deal with statutory texts rather than disembodied purposes, we assume that AT&T is proposing an interpretation of 28 U.S.C. Sec. 2344. This provides, in relevant part, that parties aggrieved by a final agency order "may, within 60 days after its entry, file a petition to review the order." That language can (with some straining) be interpreted to establish sixty days after entry as the filing deadline rather than to establish the sixty-day period after entry as the filing "window"--thus precluding petitions filed more than sixty days after entry, but not those filed before entry. Cf. Newsweek, Inc. v. United States Postal Service, 652 F.2d 239 (2d Cir.1981) (39 U.S.C. Sec. 3628, which provides that certain decisions of the Board of Governors of the Postal Service "may be appealed ... within 15 days after [their] publication," permits judicial review of appeals filed prior to publication, as long as the decisions appealed from were final).
 
 
 6
 We decline to adopt so novel an interpretation of Sec. 2344. Its language is inapt for the purpose. If the intent were to establish a filing deadline rather than a filing window, it would more naturally have been phrased "no later than 60 days after ... entry" rather than "within 60 days after ... entry." AT&T cites no case--and our research reveals none other than Newsweek[2]--in which any court has interpreted any of the dozens of functionally identical statutory time requirements for the filing of review petitions as establishing only a termination date, and not a commencement date, for judicial jurisdiction. To the contrary, courts have often dismissed premature petitions under provisions analogous to Sec. 2344, never suggesting that they were free to do otherwise. See, e.g., Associated Gas Distributors v. FERC, 738 F.2d 1388 (D.C.Cir.1984) (16 U.S.C. Sec. 825l(b), requiring filing "within sixty days after the order"); Public Service Co. v. FERC, 716 F.2d 778 (10th Cir.1983) (same); City of Gallup v. FERC, 702 F.2d 1116 (D.C.Cir.1983) (same); Selco Supply Co. v. EPA, 632 F.2d 863 (10th Cir.1980), cert. denied, 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 225 (1981) (alternative holding) (7 U.S.C. Sec. 136n(b), requiring filing "within 60 days after the entry" of the order); Virginia Electric & Power Co. v. EPA, 610 F.2d 187 (4th Cir.1979) (33 U.S.C. Sec. 1369(b), requiring filing "within ninety days from the date" of agency action); British Steel Corp. v. United States, 573 F.Supp. 1145 (Ct. Int'l Trade 1983) (19 U.S.C. Sec. 1516a(a)(2)(A), requiring filing "[w]ithin thirty days after the date of publication").
 
 
 7
 We note, moreover, that the strained construction proposed by AT&T would have unfortunate consequences. If the courts did not use the commencement date for the running of the limitations period as the starting date for the availability of judicial review, they would have to devise some other date for that purpose. It is not apparent to us that any date would be within their power to prescribe other than (what AT&T urges here) the earliest date when the order is final and ripe for review. But the law of finality and ripeness being as complex as it is, that is less a date than it is a lawsuit. See, e.g., Andrade v. Lauer, 729 F.2d 1475, 1480-84 (D.C.Cir.1984); Carter/Mondale Presidential Committee v. FEC, 711 F.2d 279 (D.C.Cir.1983). It makes no sense to reject the more natural meaning of these limitations statutes in order to put in place a system that consumes resources in argument over a technical and (if the rule were clear) utterly inconsequential point.
 
 
 8
 We therefore hold that Sec. 2344 imposes a jurisdictional bar to judicial consideration of petitions filed prior to entry of the agency orders to which they pertain. The situation which thereupon arises when a petition filed before entry is dismissed after entry (after the defect has been, one might say, eliminated) is no more anomalous than the situation which arises when petitions that are premature for other reasons are dismissed despite the fact that the prematurity of the court's reaching the issue (but not the prematurity of the filing ) has been eliminated. For example, a challenge to now-final agency action that was filed before it became final must be dismissed. See, e.g., Industrial Union Department, AFL-CIO v. Bingham, 570 F.2d 965, 968-69 (D.C.Cir.1977) (per curiam); Selco Supply Co., 632 F.2d at 865. We see no basis for a distinction here.
 
 II
 
 9
 AT&T and the FCC (which also opposes this motion to dismiss) make another argument, which goes not to the effect of "entry" under Sec. 2344, but to when it must be deemed to occur. As noted earlier, 47 U.S.C. Sec. 405 specifies that entry under Sec. 2344 occurs when public notice of the order is given; and a Commission regulation, 47 C.F.R. Sec. 1.4(b), further specifies that public notice shall be deemed given at 3:00 p.m. on the day after Federal Register publication. AT&T and the Commission assert that this last link in the chain breaks in the present case, leaving this court free to decide for itself when public notice was given--which AT&T suggests should be when the order was released to the public on March 8, a week before this petition was filed. They contend that, for purposes of determining prematurity of filings (though not for other purposes), the regulation was intended to apply, and hence provides the requisite content, only in the situation where there is a "race to the courthouse," i.e., where two or more petitions to review the same order are filed in separate courts, and it is necessary to determine which was properly filed first in order to decide which court has jurisdiction under 28 U.S.C. Sec. 2112(a) (1982). See generally Comment, A Proposal to End the Race to the Court House in Appeals from Federal Administrative Orders, 68 COLUM.L.REV. 166 (1968). In the race-to-the-courthouse situation, AT&T asserts that Sec. 1.4(b) establishes prematurity only for the purpose of determining who wins the race, and not for purposes of requiring dismissal; while the FCC asserts (as it must, given its prior practice in moving to dismiss, see supra page 377 note 2) that in that situation Sec. 1.4(b) establishes prematurity for purposes of dismissal as well. They both agree, however, that since no race is at issue here, Sec. 1.4(b) is irrelevant.
 
 
 10
 AT&T's variation has the advantage of having been accepted by the Seventh Circuit in North American Telecommunications Association v. FCC ("NATA"), 751 F.2d 207 (7th Cir.1984) (per curiam); but the disadvantage of being the less logical of the two. We do not see on what basis the first-filed petition for review can be said not to be the "first instituted" under 28 U.S.C. Sec. 2112, and thus not to win the race, unless it has not been instituted effectively, i.e., the court has no jurisdiction over it under 28 U.S.C. Sec. 2344. To accord jurisdiction but deny victory in the race seems to us impossible within the bounds of reasoned analysis that constrain our policy preferences. We know of no case other than NATA, dealing with Sec. 1.4(b) or any of the similar regulations of other agencies, see supra pages 317 - 318, which has held, or even suggested, that a first-filed petition that loses the race to the courthouse does not lose the jurisdiction of the court as well.
 
 
 11
 But the Commission's variation has analytical problems enough of its own (most of which are shared by AT&T's). By its terms, Sec. 1.4(b)'s definition of the date of "public notice" is unqualified. We cannot imagine how one might derive such a selective application as would enable the provision to give content to 47 U.S.C. Sec. 405 and 28 U.S.C. Sec. 2344 for purposes of dismissing as untimely petitions for review filed more than sixty days after that date, see National Black Media Coalition v. FCC, 760 F.2d 1297, 1299 n. 2 (D.C.Cir.1985); and would even enable it to give content to those provisions for purposes of dismissing prematurely filed petitions in a race-to-the-courthouse situation; but would somehow deprive it of any effect on those provisions for purposes of determining prematurity when no race to the courthouse is involved. Such hodge-podge application of an unqualified provision smacks of legislation rather than the interpretation of legislation.
 
 
 12
 To justify the selectivity, AT&T appeals to the Seventh Circuit's statement in NATA that "[t]he purpose [of Sec. 1.4(b) ] ... is to regulate the well-known race to the courthouse," 751 F.2d at 208. If that was intended to mean--as it logically must mean in order to support the Seventh Circuit's result--that this is the provision's only purpose, it is incorrect. To be sure, in its opinion announcing the promulgation of Sec. 1.4(b) in its present form, the FCC noted the helpful effect the amendments would have in providing a single, well defined starting gun for the race to the courthouse, and stated that it was adopting them "in part" for that purpose. In re Addition of new Section 1.103 to the Commission's Rules of Practice and Procedures; Amendments to Section 1.4(b) of those Rules ("FCC Opinion"), 85 F.C.C.2d 618, 624 (1981). But it made clear that that was not their only purpose, and that they would more generally "establish a standard of finality ... for purposes of seeking ... judicial review." Id. at 618. In fact, in the Commission's listing of the important consequences of its rule the consequence we apply here came first, and the allegedly exclusive consequence of regulating the race to the courthouse came last:
 
 
 13
 Uncertainty ... persists as to when a Commission decision becomes final for purposes of seeking agency reconsideration or judicial review. The occurrence of that date of finality is significant because pleadings and other documents filed prior to that date could be dismissed as being premature. Similarly, pleadings filed after the expiration of a specified period commencing from that date could be dismissed as not being timely-filed. Finally, that date can be significant in proceedings where interested parties race to file their appeals with different appellate courts.
 
 
 14
 Id. at 622. The FCC emphasized that "important interests will be served by making parties await the release of the Commission's decision before seeking judicial relief. ... [O]ur finality date rules [may prevent the filing for review of orders that might subsequently be altered by the Commission,] ... may encourage the parties to acquaint themselves with the Commission's written decisions before filing appeals, and may reduce the strain on judicial resources." Id. at 625-26. The FCC concluded that "since the courts have recognized an agency's discretion to specify its own finality dates, an appeal (other than a petition for injunctive relief)[3] filed prior to the finality date would be dismissed." Id. at 626 (emphasis added). In fact, the FCC not only addressed the precise issue before us with the foregoing clarity, but even addressed it by way of response (through confession and avoidance) to an objection raised in that proceeding by the precise petitioner before us. AT&T had asserted in that proceeding the opposite of what it asserts here, that Sec. 1.4(b) would eliminate jurisdiction over filings made before the defined publication date. See id. at 624. It was correct.
 
 
 15
 Since Sec. 2344 confers no jurisdiction over a petition challenging an agency order not yet entered when the petition is filed; and since AT&T's petition was filed on March 15 and the order it addresses was not entered until March 22; we cannot consider it.
 
 III
 
 16
 Finally, petitioner suggests that we should make an exception from the jurisdictional prohibition in the present case because the Clerk of this Court allegedly encouraged premature filing of the petition, in order that the case might promptly be consolidated with earlier filed cases raising related issues. We note at the outset that nothing prevented AT&T from supplementing its premature petition with a later protective petition--as MCI did and as we have repeatedly urged petitioners to do in analogous situations, see, e.g., Eagle-Picher Industries, Inc. v. EPA, 759 F.2d 905, 912 & n. 36 (D.C.Cir.1985). In any event, in our view we have no power to make the exception AT&T requests. See National Black Media Coalition, 760 F.2d at 1299. Nor is such a power suggested by our recent decision in Eagle-Picher. There petitioners filed a timely petition for review of an EPA rule listing 400 chemical waste sites that might merit further agency action. Petitioners' challenge to the list included a claim that the methodology used to generate it was unlawful. The EPA objected that the methodology had been promulgated in a previous rulemaking proceeding, and that because petitioners had not sought judicial review of the outcome of that proceeding within ninety days as required by statute, they could not now complain that the methodology was unlawful. Petitioners replied that they could not have sought judicial review of the methodology during the statutory period, because the issue of its lawfulness was not then ripe. In the course of resolving this dispute, Eagle-Picher discussed generally the sort of circumstances that justify an exception to the rule against "entertain[ing] untimely claims," 759 F.2d at 911.
 
 
 17
 The important point about that discussion, for present purposes, is that it addressed the issue of when a party may use a timely petition challenging one agency action to call into question the legality of earlier, related action that the party did not challenge at the time it was taken. This issue typically arises when a litigant files a timely request for judicial review of an agency refusal to revise or revoke earlier agency action, see, e.g., Natural Resources Defense Council v. NRC, 666 F.2d 595 (D.C.Cir.1981); Functional Music, Inc. v. FCC, 274 F.2d 543 (D.C.Cir.1958), cert. denied, 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959), or a timely challenge to agency action enforcing or implementing a previously adopted rule, see, e.g., Eagle-Picher; Texas v. United States, 749 F.2d 1144 (5th Cir.1985). In noting that some such challenges have been permitted, Eagle-Picher was discussing not an exception to the literal application of jurisdictional timeliness requirements--i.e., their application to the agency action immediately under review. That would directly violate, in addition to the jurisdictional statutes themselves, FED.R.APP.P. 26(b), which explicitly forbids courts from "enlarg[ing] the time prescribed by law for filing a petition to ... review ... an order of an administrative agency, ... except as specifically authorized by law." Rather, it was discussing an exception to the extended application of those statutes, whereby even a timely challenge to later agency action will not be permitted to call into question the validity of earlier agency action that was not appealed to the courts within the required period. This distinction between direct challenge out of time and later collateral attack in a timely filed proceeding has been noted by this court elsewhere. See City of Batavia v. FERC, 672 F.2d 64, 72 n. 15 (D.C.Cir.1982). With one exception, distinguishable from the facts of this case,[4] we know of no decision accepting a petition that was not filed within the time limits established by the jurisdictional review statute covering the immediate agency action under challenge. Nor are we willing to depart from this case-law and ignore the plainly applicable language of the jurisdictional statute in the present case. If the FCC takes some other action adversely affecting AT&T, which AT&T challenges in timely fashion on the basis of the alleged invalidity of the order at issue here, we will then confront the question whether AT&T's alleged reliance on advice from our Clerk would permit that otherwise prohibited attack. But the direct attack before us is barred.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 We have invited administrative agencies to "promulgate straightforward regulations explaining how and when their reviewable orders are to issue," in the hope that "protracted procedural disputes born of the desire to win the race to the courthouse would largely be consigned to an early grave." International Union of Electrical, Radio & Machine Workers v. NLRB, 610 F.2d 956, 964 (D.C.Cir.1979). The FCC has accepted our invitation by promulgating an unambiguous regulation that combines with statutory review provisions to specify a clearly defined sixty-day period within which petitions for review must be filed; judicially created exceptions can only exhume what the rule was intended to bury.
 
 The motion to dismiss is
 
 21
 Granted.
 
 
 
 [1]
 In support of its argument MCI cites an unpublished order of this court. We have disregarded the reference and admonish counsel that Rule 8(f) of the General Rules of this court is to be observed: "Unpublished orders, including explanatory memoranda of this Court, are not to be cited in briefs or memoranda of counsel as precedents."
 
 
 [2]
 Newsweek is in any event readily distinguishable from the present case. It relied in part upon the fact that no agency regulation established the date of publication as the starting date for appeal, 652 F.2d at 242. In the present case, by contrast, 47 C.F.R. Sec. 1.103(b) (1984) expressly states that "Commission action shall be deemed final, for purposes of ... judicial review, on the date of public notice as defined in Sec. 1.4(b)." Newsweek also relied upon the fact that the Postal Service had "never challenged any of the many appeals from decisions of the Governors filed after issuance but before publication," id. at 243. Here the FCC's response to MCI's motion to dismiss acknowledges that it has sought dismissal of petitions filed before the "entry" date--though only, it asserts, where necessary to prevent the prematurely filing party from determining venue, see infra Part II
 
 
 [3]
 The parenthetical exception evidently referred to an injunction against the Commission's making its action effective before judicial review was available. See FCC Opinion at 624, 626. That is not, of course, what was sought here
 
 
 [4]
 The exception is Recreation Vehicle Industry Association v. EPA, 653 F.2d 562 (D.C.Cir.1981). There the Association ("RVIA"), uncertain whether newly promulgated noise pollution control regulations applied to motor homes, petitioned EPA for clarification. After a lapse of four months it filed an untimely petition for review of the regulations. Approximately three months later, while RVIA's petition was still pending, EPA notified RVIA that the regulations applied to motor homes. RVIA then sought reconsideration of the decision to include motor homes; EPA granted the request for reconsideration, and reaffirmed its decision. The process of judicial review of RVIA's petition, which had been suspended during these proceedings, then resumed. Rejecting EPA's claim that RVIA's petition was untimely, the court held that, when an agency leaves room for doubt as to the applicability of its actions, the statutory review period is tolled until that doubt is eliminated. 653 F.2d at 566-68. The court did not consider whether its approach was consistent with the strictures of FED.R.APP.P. 26(b). Nor did it display any awareness of this court's otherwise consistent practice of dismissing petitions that for whatever reasons are not in technical compliance with jurisdictional requirements but advising petitioners to request relief from the relevant agency and, if such relief is refused, to file a timely petition for review of the agency's refusal, see, e.g., Baltimore Gas & Electric Co. v. ICC, 672 F.2d 146, 149-50 (D.C.Cir.1982); Investment Company Institute v. Board of Governors of Federal Reserve System, 551 F.2d 1270, 1280-83 (D.C.Cir.1977). We are unwilling to expand the narrow exception RVIA creates