130 F.3d 1090
 45 ERC 1788, 327 U.S.App.D.C. 297, 28
Envtl. L. Rep. 20,426
 HORSEHEAD RESOURCE DEVELOPMENT COMPANY, INC., Petitioner,
v.
ENVIRONMENTAL PROTECTION AGENCY and Carol M. Browner,
Administrator, Respondents,
Environmental Technology Council, Inc., et al., Intervenors.
 No. 95-1286.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 9, 1997.
Decided Dec. 12, 1997.
 
 On Petition for Review of an Order of the Environmental Protection Agency
 Paul E. Gutermann, Washington, DC, argued the cause for the petitioner. John N. Moore was on brief.
 Robert I. Dodge, Attorney, United States Department of Justice, Washington, DC, argued the cause for the respondents. Lois J. Schiffer, Assistant Attorney General, United States Department of Justice, and Paul M. Bangser, Counsel, Environmental Protection Agency, were on brief.
 Karl S. Bourdeau, Washington, DC, argued the cause for the intervenors. William M. Guerry, Jr., Chet M. Thompson and David R. Case were on brief.
 Before: WALD, HENDERSON and GARLAND, Circuit Judges.
 Opinion for the court filed by Circuit Judge KAREN LeKRAFT HENDERSON.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 The petitioner, Horsehead Resource Development Company (Horsehead), asks this Court to vacate a de-listing rule of the Environmental Protection Agency (EPA). The rule excludes electric arc furnace dust treated by the Super Detoxtm process from the list of "hazardous wastes" regulated by the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq., (RCRA). Horsehead contends that EPA promulgated the de-listing rule in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq., (APA), and the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq., (NEPA). Further, it claims that the de-listing rule violates RCRA and the Pollution Prevention Act, 42 U.S.C. §§ 13101 et seq. The intervenors and respondent EPA dispute Horsehead's claims and, in addition, argue that Horsehead's petition should be dismissed for lack of jurisdiction, either because the petition was filed prematurely or because Horsehead lacks standing.
 
 
 2
 We hold that Horsehead's petition was filed prematurely and we are therefore without jurisdiction to consider it. Accordingly we dismiss the petition and do not reach the other arguments advanced by the parties.
 
 I. BACKGROUND
 
 3
 Electric arc furnace dust (Dust) is a byproduct of the primary production of steel. According to the petitioner, some 550,000 tons of Dust are generated annually by domestic steel mills, making it "the second largest inorganic hazardous waste stream in the United States." Pet'r Br. at 2. Dust is listed as a RCRA hazardous waste because it contains cadmium, hexavalent chromium, lead and other potentially toxic compounds. See 40 C.F.R. § 261.32 (1997); Steel Mfrs. Ass'n v. EPA, 27 F.3d 642, 645 (D.C.Cir.1994) (discussing Dust treatment standards).
 
 
 4
 In August 1992, Conversion Systems, Inc. (CSI), an intervenor here, petitioned EPA to de-list Dust treated by its Super Detoxtm process. On November 2, 1993, EPA published a Notice of Proposed Rulemaking, indicating its intent to grant CSI's de-listing petition. See Hazardous Waste Management System; Identification and Listing of Hazardous Waste; Proposed Exclusion, 58 Fed.Reg. 58,521 (1993) (to be codified at 40 C.F.R. pt. 261) (proposed Nov. 2, 1993). Horsehead subsequently submitted comments in opposition to the proposed de-listing rule, raising both environmental and economic issues.[1] JA 209-303, 317-77.
 
 
 5
 Nevertheless, over Horsehead's objections, EPA decided to make final the proposed de-listing rule without significant modification. Accordingly, on May 30, 1995 the EPA Administrator signed the final de-listing rule and EPA distributed copies of it to Horsehead and other interested parties.[2] Horsehead filed the instant petition for review on June 1, 1995. EPA filed the de-listing rule with the Office of the Federal Register on June 12, 1995 and the rule was published in the Federal Register and became effective the next day, June 13, 1995. See Hazardous Waste Management System; Identification and Listing of Hazardous Waste; Final Exclusion, 60 Fed.Reg. 31,107 (1995) (to be codified at 40 C.F.R. pt. 261).
 
 II. DISCUSSION
 
 6
 Our jurisdiction to hear Horsehead's petition springs from 42 U.S.C. § 6976(a), which in relevant part provides:
 
 
 7
 Any judicial review of final regulations promulgated pursuant to this chapter and the Administrator's denial of any petition for the promulgation, amendment, or repeal of any regulation under this chapter shall be in accordance with sections 701 through 706 of Title 5, except that--
 
 
 8
 (1) a petition for review of action of the Administrator in promulgating any regulation, or requirement under this chapter or denying any petition for the promulgation, amendment or repeal of any regulation under this chapter may be filed only in the United States Court of Appeals for the District of Columbia, and such petition shall be filed within ninety days from the date of such promulgation or denial, or after such date if such petition for review is based solely on grounds arising after such ninetieth day; action of the Administrator with respect to which review could have been obtained under this subsection shall not be subject to judicial review in civil or criminal proceedings for enforcement;....
 
 
 9
 42 U.S.C. § 6976(a)(1) (emphasis added); cf. Waste Management of Illinois, Inc. v. EPA, 945 F.2d 419, 421 (D.C.Cir.1991) ("In order to obtain judicial review of a regulation promulgated under RCRA, a petition for review must be filed in this court within ninety days of the promulgation of the regulation."); United Techs. Corp. v. EPA, 821 F.2d 714, 720-21 (D.C.Cir.1987) ("Our jurisdiction in these cases stems from section 7006(a)(1) of [RCRA], 42 U.S.C. § 6976(a)(1) (1982).").
 
 
 10
 Horsehead contends that section 6976(a)(1) establishes only a filing deadline and thus a petition for review may be filed any time after EPA takes final action on (i.e., signs) a delisting rule. Alternatively, if section 6976(a)(1) sets forth a filing window, Horsehead argues that the filing window opens either on the date the Administrator signs the de-listing rule or on the date EPA distributes copies of it. By any of these measures, Horsehead claims, its petition cannot be deemed premature.
 
 
 11
 EPA and the intervenors contend that section 6976(a)(1) establishes a filing window, not a filing deadline, that opens on the date of "promulgation." They claim that "promulgation" as used in section 6976(a)(1) means the date the final rule is published in the Federal Register and therefore Horsehead filed its petition twelve days prematurely. The parties therefore pose two questions: (1) does section 6976(a)(1) establish a filing deadline or a filing window; and (2) if section 6976(a)(1) establishes a filing window, when does that window open?
 
 A. Section 6976(a)(1)
 Creates Filing Window
 
 12
 With respect to the first question, we think the holding in Western Union Telegraph Co. v. Federal Communications Commission controls. 773 F.2d 375 (D.C.Cir.1985). Western Union construed an FCC jurisdictional provision that requires a petition for review of a final FCC order to be filed "within 60 days after 'entry' of the order." 773 F.2d at 377-78 (emphasis added). We held that the word "within" establishes a filing window, not a filing deadline: "If the intent were to establish a filing deadline rather than a filing window, [the provision in question] would more naturally have been phrased 'no later than 60 days after ... entry' rather than 'within 60 days after ... entry.' " Id. at 377 (emphasis added); see also Waterway Communications Sys., Inc. v. FCC, 851 F.2d 401, 405-06 (D.C.Cir.1988) (applying Western Union to conclude jurisdictional statute, requiring filing "with the court within thirty days from the date upon which public notice is given," established filing window). Because section 6976(a)(1) uses the same "within" phrase, Western Union compels the conclusion that section 6976(a)(1) establishes a filing window, not a filing deadline.
 
 
 13
 B. Opening of Filing Window Created by Section 6976(a)(1)
 
 
 14
 We must next decide when the filing window opens, that is, what "promulgation" as used in section 6976(a)(1) means. The holding in National Grain & Feed Ass'n, Inc. v. OSHA, 845 F.2d 345 (D.C.Cir.1988), is instructive. There this court stated: "Based on the plain meaning of [the jurisdictional statute], the ordinary usage of the term promulgate, and the lack of any specific agency regulation defining the date of promulgation, we conclude that an OSHA standard is promulgated on the date that it is published in the Federal Register." Id. at 346 (emphasis added).[3] We read National Grain to establish a default rule: If the agency does not define the term by regulation and if the statute supports (or at least does not foreclose) the interpretation, "promulgation" is accorded its "ordinary meaning"--i.e., publication in the Federal Register. See also United Techs. Corp. v. OSHA, 836 F.2d 52, 54 (2d Cir.1987) ("As the term is generally used, 'promulgate' means 'to make known by open declaration' or 'to make ... public the terms' of a rule of law. See Webster's Third New Int'l Dictionary 1816 (1981). We conclude that the amendments in this case were promulgated when they were published in the Federal Register ...."), cited with approval by National Grain, 845 F.2d at 346 ("We agree [with United Technologies' holding], at least in the absence of a valid OSHA regulation fixing some other [window-opening] date."); cf. Western Union, 773 F.2d at 377-78 (dismissing petition as premature because filed six days before challenged OSHA regulation published in Federal Register); Waterway Communications, 851 F.2d at 405-06 (dismissing petition as premature because filed eighteen days before FCC notified public of licensure).
 
 
 15
 As was the case with OSHA in National Grain, EPA has not defined "promulgation" by regulation. Moreover, section 6976(a)(1) itself does not manifest that the word is to be given a special meaning. The "ordinary usage" of the verb "promulgate" and the noun "promulgation" has not changed since National Grain was decided. Accordingly, we believe National Grain's default rule applies and therefore conclude that "promulgation" as used in section 6976(a)(1) means Federal Register publication.
 
 
 16
 Horsehead nonetheless contends that we should find that the de-listing rule was "promulgated" on the day it was signed because EPA has consistently interpreted its obligation to "promulgate" a rule by a date certain--whether imposed by statute or by court order--to be met by the Administrator's signing of the final rule. Horsehead argues that EPA should not be permitted to apply a different interpretation to RCRA's judicial review provision. While we are troubled by EPA's stance that it can construe "promulgation" to mean one thing under section 6976(a)(1) but another to determine compliance with a statutory or court-ordered "promulgation" deadline, we cannot agree that merely signing the final rule is sufficient to open the section 6976(a)(1) filing window.
 
 
 17
 As the Supreme Court observed almost five decades ago, an agency must give some notice of "the substance" of its final action before that action can be deemed ripe for judicial review:
 
 
 18
 Of course, the [Federal Power] Commission has considerable administrative discretion to decide when an order may fairly be deemed to have been "issued." Section 16 of the [Natural Gas] Act provides that "Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe." But surely [an order] cannot be said to have been issued for purposes of defining rights and the seeking of reconsideration by an aggrieved person if its substance is merely in the bosom of the Commission. Knowledge of the substance must to some extent be made manifest.
 
 
 19
 Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 676, 70 S.Ct. 876, 881, 94 L.Ed. 1194 (1950); accord Industrial Union Dep't, AFL-CIO v. Bingham, 570 F.2d 965, 969 (D.C.Cir.1977) (Leventhal, J., concurring) (observing that signing OSHA regulation, without communication of its substance to interested members of public, would not suffice to open filing window).
 
 
 20
 Moreover, we think Horsehead's interpretation is inconsistent with the Congress's unambiguously expressed intent that petitions be filed "within ninety days from the date of ... promulgation." If the section 6976(a)(1) filing window opens on the date of signature, it must close ninety days after signature.[4] Yet according to Horsehead's interpretation, if EPA had not distributed copies of the signed de-listing rule in advance of its publication, and if interested parties had not otherwise received actual notice of the rule, the signature-to-publication delay here--which is probably not unusual--would have effectively shortened the filing period by two weeks.
 
 
 21
 Horsehead next argues that even if the de-listing rule was not promulgated when signed, EPA's pre-publication distribution of it should be deemed to constitute "promulgation" under this court's holdings in Saturn Airways, Inc. v. Civil Aeronautics Board, 476 F.2d 907 (D.C.Cir.1973), and Industrial Union, supra. We find, however, that neither case supports Horsehead's interpretation of section 6976(a)(1) "promulgation" as synonymous with pre-publication distribution of a signed rule.
 
 
 22
 First, in Saturn Airways, this court was asked to determine whether petitions seeking review of a final order of the Civil Aeronautics Board were filed prematurely. The only question was whether filing of the review petitions "preceded issuance of an order by the Board." 476 F.2d at 909 (1973) (emphasis added). In the absence of statutory language declaring when an order became reviewable, Saturn Airways held that a petition for review was not premature if filed after "the Board had [both] taken what it deemed to be official action" and issued a press release that communicated "the substance of that action ... to the public." Id. (citing Skelly Oil Co., 339 U.S. at 676, 70 S.Ct. at 881). While Saturn Airways may be instructive in determining when a matter is ripe for review in the absence of statutory language so providing, we think it largely beside the point here where we must construe the express language provided by the Congress. Cf. Western Union, 773 F.2d at 377 ("[W]e deal with statutory texts rather than disembodied purposes....").
 
 
 23
 Second, in Industrial Union, this court was asked to construe a statute establishing the requirements for judicial review of a final OSHA order or regulation. The statute, 29 U.S.C. § 655(f), provided that "[a]ny person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard." Industrial Union, 570 F.2d at 967 n. 2 (emphasis added). A sharply-splintered court concluded that the petition--filed after the OSHA standard was signed and was distributed and explained to representatives of some of the parties--was not prematurely filed under section 655(f). Id. at 968-71, 976-79.
 
 
 24
 While Judges Leventhal and Fahy so concluded in Industrial Union, each wrote (and reasoned) separately.[5] Id. To the extent that a common rationale supports their opinions, we think it is this: In the absence of a regulation (or statutory language) defining the key terms of a jurisdictional statute, we should defer to an agency's interpretation of that statute "if it is reasonable." Id. at 969; compare id. (Leventhal, J.) ("It is not part of our judicial function, nor do we have any inclination, to dictate to agencies how they may or may not promulgate their actions. Agencies are vested with considerable discretion in such matters.... We should give deference to the agency's choice if it is reasonable.") (citation omitted), with id. at 976 (Fahy, J.) ("The Secretary of Labor throughout these proceedings has maintained that the ruling was issued [before the petition was filed], and it is recognized that his position is entitled to weight.").[6]
 
 
 25
 Finally, while EPA failed to bring it to our attention and during oral argument seemed reluctant to rely on it, EPA has a regulation that we think plainly forecloses Horsehead's interpretation of "promulgation." The regulation prescribes the procedure for approving RCRA de-listing petitions, providing in relevant part:
 
 
 26
 After evaluating all public comments, the Administrator will make a final decision by publishing in the FEDERAL REGISTER a regulatory amendment or a denial of the petition.
 
 
 27
 40 C.F.R. § 260.20(e) (1997) (emphasis added). The plain import of section 260.20(e) is that until Federal Register publication has occurred, the Administrator has not "ma[de] a final decision" on a de-listing petition. Because only final agency action is reviewable under either section 6976(a) (entitled "Review of final regulations and certain petitions") or the APA, see Dalton v. Specter, 511 U.S. 462, 468-69, 114 S.Ct. 1719, 1724, 128 L.Ed.2d 497 (1994), "promulgation" cannot occur in advance of Federal Register publication.
 
 
 28
 Although the result we reach may seem harsh, we note that "nothing prevented [Horsehead] from supplementing its premature petition with a later protective petition--... as we have repeatedly urged petitioners to do in analogous situations...." Western Union, 773 F.2d at 380.
 
 III. CONCLUSION
 
 29
 For the foregoing reasons, we hold as follows: (1) section 6976(a)(1) establishes a filing window, not a filing deadline, which opens on the date of "promulgation"; (2) at least in the absence of a contrary agency regulation, "promulgation" as used in section 6976(a)(1) means the date of Federal Register publication; (3) Horsehead petitioned this court for review of the de-listing rule twelve days before the rule was promulgated; and (4) we are therefore without jurisdiction to reach the merits of Horsehead's petition. Accordingly, the instant petition is
 
 
 30
 Dismissed.
 
 
 
 [1]
 Notwithstanding its representations to the contrary, Horsehead's interest in the de-listing rule appears to be largely economic. It currently controls a dominant share of the Dust recycling and disposal business and asserts that the de-listing rule "threatens" it with "grievous economic harm" because CSI's Super Detoxtm process is a substantially cheaper treatment technology than the process Horsehead uses. Pet'r Br. at 37-38; JA 354
 
 
 [2]
 The record does not indicate the date on which copies of the signed rule were distributed to interested parties nor does it indicate when Horsehead received a copy of the rule or first learned that it had been signed
 
 
 [3]
 In so concluding, the court relied (at least in part) on the fact that OSHA had defined "issuance" of the regulation--an action the statute made antecedent to promulgation--as the date on which a copy of the regulation is filed with the Office of the Federal Register. We are confronted with an analogous circumstance here because EPA's own de-listing regulation defines antecedent action--i.e., "final action" on a de-listing petition--as the date of Federal Register publication. See infra discussion, p. 1095
 
 
 [4]
 Horsehead suggests that the section 6976(a)(1) filing window opens on the signing date and closes ninety days after the date of Federal Register publication. If we agreed with Horsehead, we would extend the section 6976(a)(1) filing window here from ninety to 104 days. We think that any such extension is plainly proscribed by the Congress's express intent to establish a ninety-day filing period, by Supreme Court precedent and by Fed. R.App. P. 26(b). See United States v. Locke, 471 U.S. 84, 93-94, 105 S.Ct. 1785, 1791-92, 85 L.Ed.2d 64 (1985) ("[W]ith respect to filing deadlines a literal reading of Congress' words is generally the only proper reading of those words.... Faced with the inherent arbitrariness of filing deadlines, we must, at least in a civil case, apply by its terms the date fixed by the statute."); but cf. id. at 94 n. 10, 105 S.Ct. at 1792 n. 10 (dicta regarding possible exceptions); see also Fed. R.App. P. 26(b) ("Nor may the court enlarge the time prescribed by law for filing a petition to enjoin, set aside, suspend, modify, enforce or otherwise review, or a notice of appeal from, an order of an administrative agency, board, commission or officer of the United States, except as specifically authorized by law.")
 Nor does Horsehead's invocation of 44 U.S.C. § 1507 alter our conclusion. That provision merely states that a party without actual notice of a regulation cannot be bound by the regulation until it is filed with the Office of the Federal Register and a copy made available for public inspection.
 
 
 [5]
 The per curiam opinion in Industrial Union states only a result; it does not identify any agreed upon analysis supporting the result. See Industrial Union, 570 F.2d at 966 ("The court now announces its reasons as follows: (1) Judges Fahy and Leventhal agree that the court has jurisdiction of the petition filed by the AFL-CIO. Judge Wilkey, dissenting in this respect, is of the view that this petition is premature and should be dismissed for lack of jurisdiction. Therefore, the motion to dismiss the Union's petition for review, on grounds of prematurity and lack of jurisdiction, is denied.")
 
 
 [6]
 Industrial Union's "holding" may not survive National Grain and Western Union, which declined to defer to agency interpretations of statutes governing the timing of judicial review, where those interpretations were rendered in the absence of (National Grain), or were contrary to (Western Union), agency regulations. See National Grain, 845 F.2d at 346 (rejecting agency interpretation of "promulgation" as synonymous with regulatory definition of "issuance" because "[i]t is clear from a reading of 29 U.S.C. § 655(f) that Congress intended" "issuance" and "promulgation" to be defined differently); Western Union, 773 F.2d at 378 ("the FCC ... also opposes this motion to dismiss" on premature filing ground) (parentheses omitted)
 Even assuming we have not retreated from Industrial Union, our according EPA's interpretation of "promulgation" the deference Industrial Union suggests is appropriate would not aid Horsehead's rival interpretation.