**SOUTHERN PACIFIC PIPE LINES, INC., Petitioner,**

v.

**U.S. DEPARTMENT OF TRANSPORTATION, et al., Respondents,**

**State of Texas, State of California, Intervenors.**
**(Two Cases)**

**Nos. 85–1452, 85–1732.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 29, 1986.

Decided Aug. 1, 1986.

As Amended Sept. 9, 1986.

John MacDonald Smith, with whom William E. Still, Thormund A. Miller and Carol A. Harris were on the brief for petitioner in Nos. 85–1452 and 85–1732.

Barbara Betsock, Atty., Research and Special Programs Admin., Dept. of Transp., with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice was on the brief for respondents in Nos. 85–1452 and 85–1732.

Linda A. Cabatic was on the brief for intervenor, State of California, in Nos. 85–1452 and 85–1732.

Fernando Rodriquez and William B. Churchill were on the brief for intervenor, State of Texas, in Nos. 85–1452 and 85–1732.

Before STARR, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Petitioner Southern Pacific Pipe Lines (SPPL) challenges certain regulations of the Secretary of Transportation as inconsistent with The Hazardous Liquid Pipeline Safety Act of 1979, 49 U.S.C. App. §§ 2001–2014 (1982 and Supp. III 1985) (the HLPSA). We hold that the Secretary's regulations embody a reasonable interpretation of the statute and accordingly deny the petitions.[1]

The Act, designed to broaden federal authority over the transportation of hazardous liquids in pipelines, empowers the Secretary to impose minimum federal safety standards on both interstate and intrastate pipelines; however, she is also required to cede enforcement authority over intrastate pipelines back to a state if she certifies that the state's regulatory program meets those federal minimum standards. *Id.* § 2004. In that event, states are permitted to impose "additional or more stringent safety standards for intrastate pipeline facilities and the transportation of hazardous liquids associated with such facilities, if such standards are compatible with the Federal standards...." *Id.* § 2022(d). The Secretary is *not* specifically delegated authority to determine whether additional or more stringent state standards are compatible with Federal standards. *Id.*

Although the Act thus grants states a significant role in the regulation of intrastate pipelines, it also provides that "[n]o State agency may adopt or continue in force any safety standards applicable to

---

1. The judicial review provision of the HLPSA provides that any person adversely affected or aggrieved by, *inter alia,* any regulation issued under the Act may petition for judicial review "at any time prior to the 90th day after such regulation or order is *issued."* 49 U.S.C. § 2005(a) (1982) (emphasis added). The agency noted in a footnote in its brief that the petition for review of the final regulations was filed within 90 days of the *publication* of the regulation in the Federal Register, but more than 90 days after the issuance of the regulation. Resp.Br. at 2 n. 4. Concerned about the possibility of a jurisdictional impediment to our deciding this case, we ordered the parties to submit supplemental briefs.

We conclude that we have jurisdiction. The parties agree that there was no public notice of the final regulations prior to their publication in the Federal Register, and that SPPL had no actual notice of the regulations prior to that date. In circumstances similar to these and in the absence of indications of contrary congressional intent, this Court and others have held that the time for petitioning for judicial review runs from the date of public notice. *See, e.g., City of Gallup v. FERC,* 702 F.2d 1116, 1121–23 (D.C.Cir.1983) (reviewing relevant factors and case law); *Chem-Haulers, Inc. v. United States,* 536 F.2d 610, 616 (5th Cir.1976).

interstate pipeline facilities or the transportation of hazardous liquids associated with such facilities." *Id.* Interstate pipeline facilities are in turn defined as those "used in the transportation of hazardous liquids in interstate or foreign commerce." *Id.* § 2001(5). Intrastate pipeline facilities are defined simply as those "which are not interstate pipeline facilities." *Id.* § 2001 (6). Petitioner claims that the Secretary's regulations defining interstate and intrastate pipelines, 50 Fed.Reg. 15,898–99 (1985), *codified at* 49 C.F.R. § 195.2 (1985), improperly permit the State of California to regulate interstate pipeline facilities. We are thus presented with the unusual case in which the federal government is accused of being too reticent in asserting the bounds of its exclusive jurisdiction.

SPPL operates two large pipeline systems for the transportation of petroleum products in the western United States. From their point of origin in California, the system's trunk lines extend across the state border into Nevada and Arizona. The trunk lines have a number of "delivery laterals" which enable SPPL to deliver the petroleum products to customers along the pipeline route. The focus of the dispute in this case are those lateral delivery lines located entirely within the state of California, though SPPL notes that its objection applies in principle to delivery laterals located wholly in Nevada or Arizona as well. California law imposes a number of additional testing requirements. Petitioner finds particularly objectionable a provision whereby the State Fire Marshal may at any time order hydrostatic testing of intrastate pipelines, which requires taking the pipeline out of service, filling it with water segment by segment, and subjecting it to pressure to determine whether it leaks.

Cal.Gov.Code § 51013.5(a)–(f). This process is expensive, not only because it requires the operator temporarily to stop using the pipeline, but also because it necessitates special handling of the test water, which becomes contaminated by contact with the petroleum residue in the pipeline.

■ Petitioner believes that periodic retesting of liquid pipelines is an "economically irrational and environmentally wasteful burden on a liquid pipeline system." Pet.Br. at 31. It particularly fears that the California Fire Marshal, serving at the Governor's pleasure and therefore part of a "state political administration," might be forced to respond to "an angry legislator calling a press conference" because of "a major or minor crisis on someone else's pipeline," and therefore might be led irrationally to shut down petitioner's lateral pipelines for testing. Pet.Br. at 33–34. Putting aside petitioner's implicit quarrel with the notion that law enforcement in a democracy should be responsive to political will, and its dubious view that the influence of politics at the federal level produces more rational law enforcement than in the states, it is quite apparent that petitioner is actually claiming that California's regulation is incompatible with the federal statute. This Court, however, has no jurisdiction to entertain that claim in this proceeding; petitioner, as it appeared to concede at oral argument, must bring that action directly in a federal district court.[2] In any event, whatever the proper forum for a challenge to a state regulation's compatibility with federal standards, the Secretary's regulations at issue in this proceeding do not bear on that issue.[3]

Perhaps because of that jurisdictional difficulty, petitioner's major quarrel here is

**2.** That is so because the Act makes no provision for the Secretary to pass on a "compatibility" issue; her authority, as we mention above, seems to be limited to certifying that a state program meets minimum standards.

**3.** Petitioner seeks to raise the issue here by describing the Secretary's response to its petition for reconsideration as including a "finding" that California's testing requirements, as interpreted by the Secretary, will not unduly burden

petitioner's interstate operations. *See* 50 Fed. Reg. 39,012–13 (1985). Whatever the propriety or wisdom of the Secretary's gratuitous declaration, it has nothing whatever to do with the Secretary's regulations. Moreover, it obviously could not confer jurisdiction on this Court to review a compatibility determination that the Secretary did not (and under the Act could not) purport to make.

with the Secretary's definition of interstate and intrastate pipelines: an interstate pipeline is defined as a "a pipeline or *that part* of a pipeline that is used in the transportation of hazardous liquids in interstate or foreign commerce," while an intrastate pipeline is reciprocally defined as "a pipeline or *that part* of a pipeline ... that is not an interstate pipeline." 50 Fed.Reg. 15,898–99 (1985), *codified at* 49 C.F.R. § 195.2 (1985) (emphasis added). The Secretary's addition of the phrase "that part" to the statutory definition was intended, as indicated by the appendix attached to the defining regulation, to emphasize that the Secretary interpreted the Act to mean that a wholly intrastate lateral connected to an interstate pipeline is nevertheless intrastate for purposes of the statute. *Id.* at 15,900. SPPL sought reconsideration of these regulations, claiming the statutory definition of interstate pipeline facilities includes all facilities used as an integral part of an interstate *system*—regardless of whether particular segments of the pipeline are actually involved in transporting liquids in interstate commerce. *Id.* at 39,012. The Secretary denied SPPL's petition, *id.*, and SPPL reiterates the same argument before this Court.

Petitioner relies not on the statutory provision that directly defines interstate pipelines but rather on the provision prohibiting state regulation of the "transportation of hazardous liquids *associated with* [interstate pipeline] facilities." 49 U.S.C. § 2002(d) (1982) (emphasis added). It claims that its California delivery laterals, though used solely for intrastate carriage, are engaged in the transportation of hazardous liquids connected to interstate pipeline facilities. In other words, it reads the statute to mean that the state may not regulate intrastate pipelines connected to interstate pipelines, or, any part of a pipeline system that has interstate portions. As the Secretary noted in rejecting this interpretation, "the adoption of the Southern Pacific approach could result in the virtual exclusion of the states from the area of hazardous liquid pipeline regulation. This result was not intended by Congress[,] which has always recognized a major role for the states in pipeline safety." 50 Fed.Reg. 39,011 (1985). Further, petitioner's interpretation of the Act contradicts its parallel structure: the phrase "associated with" appears also in the preceding sentence *permitting* state regulation of "intrastate pipeline facilities and the transportation of hazardous liquids associated with such facilities." 49 U.S.C. § 2002(d). Congress could not have intended the same phrase to have different meanings in two consecutive sentences. Yet under petitioner's interpretation its California laterals would be "associated with" both interstate and intrastate pipelines and would thereby simultaneously be both interstate and intrastate pipelines.

Recognizing that its suggested construction strains the Act's language, petitioner describes the statute as ambiguous and urges us to seek guidance from the legislative history. In effect, petitioner is making a classic bootstrap argument by advancing a construction of the Act that renders it confusing and then using that confusion to justify avoiding the plain meaning axiom. We need not decide whether recourse to the legislative history is required here—whether the plain meaning rule applies—because even after examining that history we believe the agency's construction is reasonable.

■ Petitioner relies on language used both in the Senate Committee Report on the Act and in the floor debate on amendments to the bill:

> The term "interstate pipeline facility" is defined to include pipeline facilities, that, either on their own or by connection with other pipeline facilities, are used to move hazardous liquids in interstate or foreign commerce. It is intended that a pipeline facility be classed as an interstate pipeline facility if it is physically part of a pipeline system that moves hazardous liquids in interstate or foreign commerce.

S.Rep.No. 182, 96 Cong., 1st Sess. 19 (1979), U.S.Code Cong. & Admin.News

1979, pp. 1971–1989; 125 Cong.Rec. 32,336 (1979).

Petitioner bases its case for a congressional specific intent on the second of these sentences, ignoring the first, which—like the statutory language to which it refers—supports the Secretary's reading. That is to say, the first sentence appears to reflect an intention that the character of a given pipeline as either interstate or intrastate depends on whether it is actually used to transport liquid moving in interstate commerce. The second sentence, on the other hand, does seem to support petitioner's expansive reading that a pipeline is interstate if it is physically part of an interstate pipeline system—regardless of how that part of the system is actually used. But, there is no clear indication that by using the phrase "physically part of a pipeline system" Congress meant to control the issue presented in this case. Such inconclusive legislative history is not sufficient to show a specific congressional intent contrary to the Secretary's interpretation, even in the absence of clear support for it in the plain meaning of the statutory language. *See Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Since the statutory language itself supports the Secretary's interpretation and the legislative history does not unambiguously manifest a specific intent to the contrary, we cannot conclude that the Secretary's interpretation is unreasonable. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 866, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694 (1984).